**UNITED STATES of America, Plaintiff,**

v.

**Nathaniel CLARK, Defendant.**

**No. 88 Cr. 0793 (RWS).**

United States District Court,
S.D. New York.

March 22, 1989.

Order March 23, 1989.

**MEMORANDUM OPINION**

SWEET, District Judge.

*Facts*

On December 22, 1988, Nathaniel Clark ("Clark") pleaded guilty to escape from federal custody in violation of 18 U.S.C. § 751. Clark was on furlough from the

FCI in Ashland, Kentucky, where he was serving a sentence for armed bank robbery, to the Manhattan House Community Treatment Center ("CTC") in New York City, where he was to serve out his sentence before a presumptive parole date of April 4, 1989. When he arrived in Manhattan on October 20, 1988, he failed to report to the CTC and was subsequently arrested at his home in Brooklyn on October 27, 1988 and charged with escaping from federal custody in violation of 18 U.S.C. § 751.

After Clark pled guilty to the charge, the Probation Department issued a presentence report in which it calculated the sentencing range mandated under the Sentencing Guidelines (the "Guidelines"). The report showed an offense level total of 11 points (13 points for the offense of escape minus two points for acceptance of responsibility). The report then determined that Clark was in Criminal History Category III, for he received three points for the bank robbery and an additional two points because he committed the escape while "under [a] criminal justice sentence." Guidelines § 4A1.1(d). Pursuant to these calculations, the Guidelines mandate a sentence of 12 to 18 months.

*Due Process*

Clark has requested that the Guidelines be applied on the grounds that they are an unconstitutional denial of due process. However, this court is bound by *United States v. Vizcaino*, 870 F.2d 52 (2nd Cir. 1989), in which the Court of Appeals for the Second Circuit held that the Guidelines did not violate due process.

*Sentencing Guideline § 4A1.1(d)*

■ Although the Guidelines will be applied in determining Clark's sentence, he will be placed in Criminal History Category II, not Category III. Sentencing Guideline § 4A1.1(d) provides that two points will be added for determining the Criminal History category of a defendant "if the defendant committed the instant offense while under

any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status."

■ Where a defendant is being sentenced for escape, however, application of § 4A1.1(d) constitutes impermissible double punishment. Based on the Sentencing Commission's evaluation of the elements of the substantive offense and its relative seriousness, § 2P1.1(a)(1) of the Guidelines assigns a base offense level of 13 to the crime of escape from custody. By also applying § 4A1.1(d) in calculating a defendant's Criminal History Category, the sentence for the crime of escape from custody is improperly enhanced, for a charge of escape will always carry with it the additional penalty of § 4A1.1(d). Section 4A1.1(d) thus should not be applied in escape cases.

Eliminating the two points required by § 4A1.1(d), Clark scores a total of three criminal history points, placing him in Criminal History Category II. In combination with the offense level of 11 (13 minus 2), the Guidelines mandate a sentence within the range of 10 to 16 months.

*Concurrent versus Consecutive Sentence*

■ Pursuant to § 2.34 and § 2.36 of the United States Parole Commission Guidelines, because Clark escaped, his parole date in April, 1989 will be rescinded and retarded for a range of 8 to 16 months. At a minimum, his unexpired sentence runs through December, 1989. A sentence imposed on Clark for the offense of escape and the revocation of his parole leading to a longer sentence arise out of the same occurrence, to wit, this escape. Sentencing Guideline § 5G1.3 provides that if the instant sentence and the unexpired sentence arise out of the same transaction or occurrence, they shall run concurrently.[1] Therefore, the sentence imposed here will run concurrently with Clark's current sentence.

1. Section 5G1.3 provides:
 If at the time of sentencing, the defendant is already serving one or more unexpired sentences, then the sentences for the instant offense(s) shall run consecutively to such unexpired sentences, unless one or more of the instant sentences and the unexpired sentences shall run concurrently, except to the extent otherwise required by law.

*Mitigating Circumstances*

 There are insufficient mitigating circumstances to justify departing downward from the Guidelines. As stated in his presentence report, Clark arrived in Manhattan five hours earlier than he expected on October 20, 1988, and decided to visit his family before reporting to CTC. When he arrived home, he learned that his stepson had been missing for a few days and his family had been threatened by a drug dealer, apparently because his stepson had run off with the dealer's narcotics. Three days later, Clark learned that his stepson was in jail in Peekskill, New York, for crack possession. Clark borrowed money and paid off the drug dealer. Seven days after his failure to report to CTC, Clark was arrested at his home. He had not attempted to call the CTC to notify them of his troubles. These circumstances do not constitute mitigating circumstances sufficient to justify departing downward from the Guidelines. *See* 18 U.S.C. § 3553(b).

*18 U.S.C. § 3013*

18 U.S.C. § 3013 provides that the sentencing court must assess between $25 and $200 on all persons convicted of offenses against the United States, with the amount of the assessment varying depending on whether the offense is a misdemeanor or a felony and whether the defendant is an individual or otherwise. Clark contends that this statute violates Article 1, Section 7 of the Constitution, the Origination Clause, because it is a revenue measure that did not originate in the House of Representatives.[2]

As the Court of Appeals for the Ninth Circuit noted in *United States v. Munoz–*

*Flores,* 863 F.2d 654 (9th Cir.1988), in order to determine whether § 3013 violates the Origination Clause, it is first necessary to determine whether it is a revenue measure, and, if so, whether it originated either in the House of Representatives or from a Senate amendment to a House revenue bill, in which case it would pass constitutional muster, or whether it originated in the Senate.

 A revenue measure is one whose "direct and avowed purpose" is to create "revenue or public funds for the service of the government," *United States v. Norton,* 91 U.S. 566, 569, 23 L.Ed. 454 (1875). The Government argues that § 3013, part of the Victims of Crime Assistance Act of 1984, was intended to generate needed income to offset the cost of the new programs under the Act. However, the language of § 3013, on its face, gives no indication that it is meant for anything other than general revenue purposes.[3] As the Ninth Circuit said in *Munoz–Flores,* "the language fails to limit or even to describe the use of the collected funds. This lack of restriction suggests that the revenue raising aspect of the bill is not subsidiary to any enunciated function." 863 F.2d at 658.

Moreover, the legislative history of § 3013 corroborates that the main purpose of the statute was raising revenue. *See Munoz–Flores,* 863 F.2d at 658–59. For example, the Senate stated:

The purpose of imposing nominal assessment fees is to generate needed income to offset the cost of the [victim's assistance fund] authorized under S.2423. Although substantial amounts will not result, these additional amounts will be

---

**2.** The Origination Clause provides: "All Bills for raising Revenue shall originate in the House of Representatives; but the Senate may propose or concur with Amendments as on other Bills."

**3.** Section 3013 provides:
(a) The court shall assess on any person convicted of an offense against the United States
 (1) in the case of a misdemeanor
 (A) the amount of $25 if the defendant is an individual; and
 (B) the amount of $200 if the defendant is a person other than an individual; and
 (2) in the case of a felony

(A) the amount of $50 if the defendant is an individual; and
 (B) the amount of $200 if the defendant is a person other than an individual
(b) Such amount so assessed shall be collected in the manner that fines are collected in criminal cases
(c) The obligation to pay an assessment ceases five years after the date of the judgment.
(d) For the purposes of this section, an offense under section 13 of this title is an offense against the United States.

helpful in financing the program and will constitute new income for the federal government.

S.Rep. No. 497, 98th Cong., 2d Sess. 13–14 (1984), *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3607, 3619–20. In addition, an assistant Attorney General told the Senate Judiciary Committee:

> we looked into the size of the source of the funding and whether it would be really worthwhile to go after this, how much it would cost us to get it. We figured out it would be approximately $2 million as a fund. There were also several other proposals within the Department of Justice looking into how to use it in the criminal justice area.

*Hearings on S. 2433 Before the Senate Comm. on the Judiciary*, 98th Cong., 2d Sess. 21, 36 (1984).

As for the government's contention that the special assessment was intended to defray costs of victim assistant programs:

> "[h]ad the proceeds been clearly confined to the purpose, the bill might well have passed constitutional muster. Its purpose might have been held not to be the raising of revenue, despite the fact that the goal of funding state criminal victim assistance programs could have been accomplished only by the raising of revenue."

*Munoz–Flores* at 658.

Further, to those who argue that the purpose of § 3013 is to punish convicts, and not to collect revenue, Congress's statement of purpose does not mention punishment as a purpose, *Munoz–Flores* at 659, and the notion that $25 for a misdemeanor or $50 for a felony constitutes meaningful punishment is ludicrous.

A penalty "is an exaction imposed by statute as punishment for an unlawful act." *United States v. La Franca*, 282 U.S. 568, 572, 51 S.Ct. 278, 280, 75 L.Ed. 551 (1931). Although some courts have held that § 3013 is a penalty, most of them have concerned challenges to the act based on the Assimilative Crimes Act. *See, e.g., United States v. Mayberry*, 774 F.2d 1018, 1021 (10th Cir.1985) (§ 3013 was penal in nature because it "places an additional bur-den or penalty upon the defendant," "is a direct consequence of conviction," imposes a higher assessment on those convicted of more serious crimes, and is collected in the same way that fines are collected in criminal cases). The Assimilative Crimes Act bars imposition of a punishment if the surrounding jurisdiction does not impose "a like punishment." 18 U.S.C. § 13. However, the definition of punishment under the Assimilative Crimes Act does not control the definition of revenue measures under the Origination Clause, and is in fact irrelevant because the courts considering the issue under the Assimilative Crimes Act did not purport "to perform the proper analysis mandated by the origination clause." *Munoz Flores*, at 660. Further, two of the three courts to have rejected the argument that § 3013 violates the Origination Clause relied on authority holding that the special assessment may not be imposed upon a conviction under the Assimilative Crimes Act. *U.S. v. Ramos*, 624 F.Supp. 970, 973 (S.D.N.Y.1985); *United States v. Hines*, No. 88 Cr. 739, 1989 WL 16565 (S.D.N.Y. Feb. 11, 1989). *But see United States v. Michaels*, 706 F.Supp. 699 (D.Minn.1989).

Although the primary purpose of § 3013 is to raise revenue, it appears that it permissibly originated in the House of Representatives, contrary to the findings of the Ninth Circuit in *Munoz–Flores*. In *Munoz–Flores*, the Court found that § 3013 was part of the Victims of Crime Assistance Act of 1984, that the Victims of Crime Assistance Act was a Senate amendment to a joint House–Senate resolution making continuing appropriations for the fiscal year 1985 (H.J.Res. 648), and that, when the House passed H.J.Res. 648, it did not contain § 3013. 863 F.2d at 660–61. Although this history is correct, it does not cover all of the legislative history that is relevant to this issue. Rather, research unavailable to the Ninth Circuit at the time it decided *Munoz–Flores* reveals that the Senate amendment was an exact copy of a bill that was introduced in and passed by the House only a few days before.

On September 25, 1984, when the House passed H.J.Res. 648 (316 to 91), which included the Comprehensive Crime Control

Act as Title II, the Act contained no provision relating to victims. When the Senate considered H.J.Res. 648, it amended the Crime Control Act and added eight more chapters. Chapter XIV, the Victims of Crime Assistance Bill, was added to Title II by Senator Strom Thurmond on October 4, 1984. That bill contained § 3013. *See* Thurmond Amendment No. 7043, 98th Cong., 2d Sess., 130 Cong.Rec. S13,520, S13,544 (daily ed. Oct. 4, 1984). After Senate consideration, the House passed the modified version of H.J.Res. 648 on October 10, 1984, the Senate passed it on October 11, 1984, and the resolution became law on October 12, 1984 (Pub.L. No. 98–473, 98 Stat. 1837). However, Senator Thurmond's amendment was a compromise bill that had been considered and passed by the House two days before it was adopted in the Senate. That compromise bill was based on a bill introduced in the House by Congressman Peter Rodino on June 30, 1983—the Victims of Crime Act of 1983, or H.R. 3498.[4]

Senator Thurmond's amendment and H.R. 3498 are almost identical, except that the House bill omits the word "penalty" from its title, and does not delineate between the assessment to be imposed on "individuals" and the assessment to be imposed on all others. By comparison, S. 2423 is different from Senator Thurmond's amendment; it contains no reference to § 3013 and uses a different format and wording. Thus, because Senator Thurmond's amendment was legislation that had previously been introduced in and passed by the House, there was no violation of the requirements of the Origination Clause.

*Conclusion*

The Guidelines mandate that Clark be sentenced to 10 to 16 months. This sentence will run concurrently with the sentence he will serve because of parole revocation. In addition, although § 3013 serves no practical purpose, it appears to be constitutional. Thus, Clark must also pay a $50 special assessment.

A further hearing in light of this opinion will be conducted on March 23, 1989.

It is so ordered.

ORDER OF MARCH 23, 1989.

In view of the above and the information offered by the defendant at today's hearing, a concurrent sentence of a year and a day is imposed.

It is so ordered.

**4.** Remarks by Congressman Rodino on the House floor, when he introduced the version of H.J.Res. 648 that included § 3013 on October 10, 1984, indicate this:

Last year, together with some 50 colleagues, I introduced H.R. 3498, the Victims of Crime Act of 1983, which calls for Federal Aid for State crime victims compensation programs and for programs that offer services and assistance to crime victims.

\* \* \* \* \* \*

The other body early last August passed a modified version of the administration bill [S. 2423], and shortly after that I began negotiations with the administration and the leadership of the other body's Judiciary Committee. Those negotiations successfully resolved the differences among the three bills—H.R. 3498, the administration bill, and the bill passed by the other body [S. 2423]. I introduced the compromise that we worked out—H.R. 6403 —which was also included in the crime package amendments to H.R. 5690 that were approved by the House on Tuesday, October 2. The other body [by Senator Thurmond's amendment] attached the compromise to the continuing resolution, and the House's conferees agreed to accept the language.
130 Cong.Rec. H12,084 (October 10, 1984).