**UNITED STATES of America, Plaintiff,**

v.

**Richard Leonard BELL, Defendant.**

**Crim. No. 5–88–021(01).**

United States District Court,
D. Minnesota,
Third Division.

June 30, 1989.

Richard E. Vosepka, Asst. U.S. Atty., Minneapolis, Minn., for plaintiff.

Robert W. Owens, Jr., Minneapolis, Minn., for defendant.

## STATEMENT OF REASONS FOR IMPOSING SENTENCE

MAGNUSON, District Judge.

### I. Findings of Fact

Neither the government nor the defendant, Richard Leonard Bell, has objected to the factual statements contained in the presentence investigation report (PSI). The court therefore adopts those statements as its findings of fact. For purposes of this opinion the court will provide a synopsis of those findings and will highlight the facts that are pertinent to sentencing.

On April 30, 1982, Bell pleaded guilty to two counts of armed bank robbery. He received concurrent sentences of eighteen years on each of these counts. Bell was paroled on January 23, 1986 and remained on parole until July 13, 1988, when the United States Parole Commission revoked his parole for violation of his parole conditions. Bell had committed a petty larceny and pleaded guilty to that offense six months earlier under an assumed name. Apparently Bell reported the petty larceny to his parole officer, who had been unaware of the offense during the six month period. As a result, the Parole Commission issued a warrant for Bell's arrest and ultimately set Bell's parole date back twelve months to May 12, 1989.

Bell arrived at the Federal Correction Institute at Sandstone, Minnesota on June 9, 1988. He remained there until October 17, 1988, at which time the authorities at Sandstone discovered that Bell was missing from the outside ground detail. Prison officials contacted the United States Marshal's Service, reported Bell missing and advised the marshals that Bell did not have permission to leave. On October 22, 1988, Bell was arrested in East Greenwich, Rhode Island. Bell pleaded guilty to the offense of escape on March 20, 1989.

### II. Application of the Guidelines

Because Bell's escape occurred after November 1, 1987, the Sentencing Reform Act of 1984[1] and the sentencing guidelines

---

1. The Sentencing Reform Act of 1984 was enact-     ed as Chapter II of the Comprehensive Crime

promulgated thereunder apply. The probation office has calculated the guidelines applicable to this case as follows: Bell pleaded guilty to a violation of 18 U.S.C. § 751(a). Guideline § 2P1.1(a)(1) provides that the base offense level for this offense is thirteen. The probation officer recommended a two-level adjustment for acceptance of responsibility, yielding a total offense level of eleven. Prior to his escape, Bell committed a number of other criminal offenses which are reflected in his criminal history score. In 1979 Bell received a five-year suspended sentence for auto theft and arson. Under guideline § 4A1.1(c) Bell received one criminal history point for this offense. Similarly, Bell received one point for a suspended sentence for possession of marijuana in 1982. For the bank robberies in 1983 Bell earned three additional criminal history points pursuant to § 4A1.1(a). For the petty larceny offense that Bell committed while on parole, he received one criminal history point. Finally, under the authority of § 4A1.1(d) the probation officer added two points to Bell's criminal history score because Bell committed the instant escape offense while under a criminal justice sentence. The resulting criminal history score of eight placed Bell in criminal history category IV, and, when combined with a total offense level of eleven, yielded a guideline imprisonment range of eighteen to twenty-four months. The probation officer also noted that guideline § 5G1.3 mandates a consecutive sentence.

Defendant challenges these guideline calculations on two grounds. First, Bell contends that since an individual cannot commit the offense of escape unless he is under a criminal justice sentence, the two-point addition to the criminal history score mandated by guideline § 4A1.1(d) is not appropriate in an escape case. Second, Bell notes that the Parole Commission will add time to the period of incarceration that he will serve by extending his parole date. The Parole Commission will impose this additional period of incarceration on Bell's bank robbery sentence regardless of the sentence imposed by the court for the sepa-

rate offense of escape. Bell contends that this Parole Commission "sentence" is a factor not adequately considered by the Sentencing Commission in adopting guideline § 5G1.3. Therefore, Bell's escape sentence should run concurrently with his prior sentence in order to avoid double punishment for the single offense of escape.

The court construes both of Bell's objections as arguments for a sentence departing from that specified by the guidelines. In considering a departure sentence the court is guided by 18 U.S.C. § 3553(b), which states that the court shall impose sentence within the range designated by the guidelines "unless the court finds that there exists an aggravating or mitigating circumstance of a kind or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." Section 3553(b) further provides, "In determining whether a circumstance was adequately taken into consideration, the court shall consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission."

The Introduction to the Federal Sentencing Guidelines Manual, an official publication of the Sentencing Commission, sheds additional light on the standards governing departure. The Sentencing Commission acknowledges that the current guidelines are an "initial set of guidelines" that will go through an evolutionary process. "By monitoring when courts depart from the guidelines and by analyzing their stated reasons for doing so, the Commission, over time, will be able to create more accurate guidelines that specify precisely where departures should and should not be permitted." Federal Sentencing Guidelines Manual, Introduction at 7 (West 1988). The Commission excludes only race, sex, national origin, creed, religion and socio-economic status, finding these to be illegitimate grounds for departure. Apart from these, "the Commission does not intend to limit the kinds of factors (whether or not men-

Control Act of 1984, Public Law 98–473, October 12, 1984, and is codified in 18 U.S.C. sections 3551–3586, 3621–3625, 3742 and 28 U.S.C. sections 991–998.

tioned anywhere else in the guidelines) that could constitute grounds for departure in an unusual case." *Id.* at 6–7.

Bell's first argument for departure is that the Sentencing Commission did not adequately consider the impact of guideline § 4A1.1(d) in an escape case. Bell does not challenge § 4A1.1(d) on its face or as it applies to other offenses. Bell contends that the Sentencing Commission should have carved out an exception to § 4A1.1(d) for escape cases because every individual guilty of the offense of escape is necessarily under a criminal justice sentence. The base offense level already includes consideration of the offender's incarcerated status, and further consideration of the offender's incarceration in computing a criminal history score constitutes double counting. Bell does not attack § 4A1.1(d) on constitutional grounds. He merely asserts that the Commission's failure to make an exception for escape cases demonstrates that it did not adequately consider the issue of double counting.

■ Generally, an offender's criminal history score and offense level are calculated independently. The criminal history score reflects the offender's prior criminal activity while the offense level measures the severity of the current offense. In this way the guidelines attempt to account for all factors relevant to sentencing, and in most cases this method is satisfactory. However, in an escape case application of guideline § 4A1.1(d) results in an overlap between current and prior offenses. The statute proscribing escape provides, "Whoever escapes or attempts to escape ... from any institution or facility in which he is confined by direction of the Attorney General" is guilty of escape. Thus, being incarcerated is an element of the offense. In addition, under the terms of § 4A1.1(d), the offender's incarcerated status enhances his criminal history score.

■ A basic policy of the guidelines is to avoid double counting. This is reflected in a number of guidelines relating either to specific offenses or to adjustments applicable to a variety of offenses. Guideline § 2K2.4 applies to penalties for the use of

firearms or armor-piercing ammunition in a crime of violence or drug trafficking offense. It states that the penalties for these actions are to be determined by 18 U.S.C. §§ 924(c) and 929(a), not by other guidelines that would enhance the penalty for an underlying offense because a firearm was used during its commission. For example, guideline § 2B3.1(b)(2) provides for enhancement of the offense level for robbery as follows:

(A) If a firearm was discharged increase by 5 levels; (B) if a firearm or a dangerous weapon was otherwise used, increase by 4 levels; (c) if a firearm or other dangerous weapon was brandished, displayed or possessed, increase by 3 levels.

If the court imposes sentence in a robbery case pursuant to 18 U.S.C. § 924(c), then the court may not also enhance the robbery sentence under guideline § 2B3.1(b)(2). The Commission's commentary to guideline § 2K2.4 makes this clear. "Where a sentence under this section is imposed in conjunction with a sentence for an underlying offense, any specific offense characteristic for the possession, use, or discharge of a firearm ... is not to be applied in respect to the guideline for the underlying offense." Commentary to § 2K2.4, Application Note 2. The background commentary on § 2K2.4 further states that the purpose of this guideline is "[t]o avoid double counting."

Chapter three of the guidelines, which covers adjustments, contains numerous examples that demonstrate the Sentencing Commission's desire to avoid double counting. The commentary to guideline § 3A1.1 relating to offense level enhancements for crimes involving vulnerable victims directs the court to "not apply this adjustment if the offense guideline specifically incorporates this factor." Commentary to § 3A1.1, Application Note 2. Similarly, although guideline § 3A1.3 mandates an offense level increase if the victim was physically restrained during the course of the offense, the commentary states that the adjustment is not appropriate "where such restraint is an element of the offense, specifically incorporated into the base offense

level, or listed as a specific offense characteristic." Commentary to § 3A1.3, Application Note 2. Guideline § 3C1.1 provides for a two-level adjustment for obstruction of justice during the investigation or prosecution of the current offense, but it does not apply to convictions for the separate offenses of contempt, obstruction of justice, perjury or bribery of a witness. *See* Commentary to § 3C1.1, Application Note 4. Finally, with respect to sentencing an offender for multiple counts the Sentencing Commission states:

> In order to limit the significance of the formal charging decision and to prevent multiple punishment for substantially identical offense conduct, this Part provides rules for grouping offenses together. Convictions on multiple counts do not result in a sentence enhancement unless they represent additional conduct that is not otherwise accounted for by the guidelines.

Introductory Commentary to § 3D1.1.

The commentary cited above demonstrates the Sentencing Commission's intent to avoid double counting in the guidelines. The underlying principle is that if one provision of the guidelines accounts for an element of the offense or a specific offense characteristic, another provision designed to account for the same factor should not apply. The same principle holds true even if the double counting relates to an element of the current offense and calculation of the criminal history score. Therefore, the question in this case is whether any of the guidelines, policy statements or commentary demonstrate a desire on the part of the Sentencing Commission to abrogate this principle by applying § 4A1.1(d) in an escape case.

The Commission has issued no policy statements with respect to § 4A1.1(d) and only two items of commentary. Application Note 4 states, "Two points are added if the defendant committed any part of the instant offense (i.e., any relevant conduct) while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." Note 4 merely parrots the language of the guideline and therefore is not helpful. The background commentary states, "Section 4A1.1(d) implements one measure of recency by adding two points if the defendants was under criminal justice control during any part of the instant offense." Again, the commentary fails to show that the commission was even aware of the double counting that occurs when § 4A1.1(d) is applied to an escape case.

■ The Court of Appeals for the Eighth Circuit has not addressed this issue yet, but at least two judges in this district have ruled without opinion that § 4A1.1(d) does not apply in escape cases. *See United States v. Cassidy*, Criminal File No. 3–88–066, Statement of Reasons (January 18, 1989) (Chief Judge Alsop); *United States v. Evidente*, Criminal File No. 5–88–003, Order (May 26, 1988) (Judge Renner). This court agrees with those rulings and finds that the Sentencing Commission inadequately considered the impact of § 4A1.1(d) in an escape case. Therefore, the court departs from the guidelines and finds that Bell's criminal history score is six, rather than eight. This places Bell in Category III and gives him an imprisonment range of 12–18 months.

Courts in other jurisdictions have reached contrary outcomes. In *United States v. Ofchinick*, 877 F.2d 251 (3d Cir. 1989), the Court of Appeals for the Third Circuit rejected Ofchinick's contention that application of § 4A1.1(d) in an escape case violates the due process clause of the Fifth Amendment. Bell has not raised a constitutional challenge, so the Third Circuit's analysis on this issue is inapposite. Ofchinick also argued that using § 4A1.1(d) in an escape case constituted double counting and was "without foundation in the law or common sense." 877 F.2d at 253. The court used a hypothetical case to demonstrate the inconsistencies in Ofchinick's argument. The court stated that the escape guideline, § 2P1.1(a)(1),

> includes offenses for instituting or assisting escapes as well as for an escape itself and sets a base offense level at 13. Inasmuch as persons not in custody may be sentenced under the guideline, it is

inconceivable that the Sentencing Commission intended the establishment of a base offense level therein to impact on the computation of the criminal history category. A contrary ruling would mean that an inmate who escaped, whose only criminal history was the offense for which he was in custody when he escaped, would be subject to the same sentencing range as a person who had no criminal history and assisted an inmate to escape. We refuse to construe the guidelines to reach such an absurd result.

877 F.2d at 256.

On its face the Third Circuit's hypothetical case makes sense. However, it is grounded on the premise that absent § 4A1.1(d), the escaping inmate and the person assisting the escape would have the same criminal history score. This premise is flawed because guidelines § 4A1.1(a), § 4A1.1(b) and § 4A1.1(c) insure that the inmate's criminal history score would reflect the offense for which he had been incarcerated. Therefore, the escaping inmate and the person assisting the escape would not be subject to the same sentencing range unless the person assisting the escape also had a prior criminal record. This demonstrates that section 4A1.1(d) need not apply to escape cases in order to preserve proportionality of punishment and that refusing to apply § 4A1.1(d) does not lead to an absurd result.

In *United States v. Jimenez*, 708 F.Supp. 964 (S.D.Ind.1989), the court noted that adding points to the defendant's criminal history score pursuant to § 4A1.1(d) and § 4A1.1(e) could increase the defendant's sentencing range for his escape offense from 12–18 months to 18–24 months. The court concluded that such a result is not inequitable and that valid reasons exist which support enhancement of the sentencing range in an escape case. The court acknowledged, however, that "there is no indication in the comments to the sentencing guidelines that the Commission considered this occurrence." *Id.* at 968.

The reasoning of *Jimenez* supports the need for a higher base offense level for the crime of escape. It does not justify enhancement of an escapee's criminal history score based on his incarcerated status, an element of the offense already taken into consideration by the base offense level. Indeed, the Jimenez court's observation that the Commission may not have considered the impact of § 4A1.1(d) in an escape case actually undermines the court's holding and supports the argument for a departure.

Bell's second objection to the sentence recommended by the probation office is that any sentence imposed by this court for the escape should run concurrently with Bell's prior sentence, not consecutively as required by guideline § 5G1.3. Bell notes that the Parole Commission will, in effect, add time to his prior sentence by delaying his parole date by several months. Bell characterizes this as double punishment for the same offense. As with Bell's first objection, he does not rely on constitutional grounds, but he argues that the Sentencing Commission did not adequately consider the effect of the Parole Commission's actions when it drafted guideline § 5G1.3.

In determining whether to impose a concurrent sentence or a consecutive sentence the court must look first to the governing statutory provisions. Title 18 U.S.C. § 3584 pertains to multiple terms of imprisonment. It provides:

(a) **Imposition of concurrent or consecutive terms**—If multiple terms of imprisonment are imposed on a defendant at the same time, or if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively, except that the terms may not run consecutively for an attempt and for another offense that was the sole objective of the attempt. Multiple terms of imprisonment imposed at the same time run concurrently unless the court orders or the statute mandates that the terms are to run consecutively. Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently.

**(b) Factors to be considered in imposing concurrent or consecutive terms.** The court, in determining whether the terms imposed are to be ordered to run concurrently or consecutively, shall consider, as to each offense for which a term of imprisonment is being imposed, the factors set forth in section 3553(a).

Section 3584 includes a presumption in favor of a consecutive sentence in an escape case, but it allows the court to order a concurrent sentence provided that the factors described in 18 U.S.C. § 3553(a) warrant it. Section 3553(a) states that the court "shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this section." Section 3553(a) continues by listing the factors to be considered by the court in imposing sentence. These include the circumstances of the offense, the characteristics of the defendant, the purposes of sentencing, the kinds of sentences available, the sentencing guidelines, any policy statements issued by the Sentencing Commission, the need to avoid unwarranted sentencing disparity, and the need to provide restitution to victims.

Guideline § 5G1.3 is directly on point. It provides:

If at the time of sentencing, the defendant is already serving one or more expired sentences, then the sentences for the instant offense(s) shall run consecutively to such unexpired sentences, unless one or more of the instant offense(s) arose out of the same transactions or occurrences as the unexpired sentences. In the latter case, such instant sentences and the unexpired sentences shall run concurrently, except to the extent otherwise required by law.

In a determinative sentencing regime § 5G1.3 makes sense. If a defendant receives a three-year sentence for some offense, but escapes after eleven months, the court must impose a consecutive sentence for the escape. The offender will serve the entire three years before beginning the escape sentence. The problem in Bell's case, however, is that although he received an eighteen-year sentence for bank robbery,

both Bell and the court which sentenced him knew that he would not serve the entire eighteen years in prison. The actual time to be served was determined by the Parole commission, which set Bell's presumptive parole date. Moreover, the Parole Commission has the authority to change that parole date or revoke parole entirely based on Bell's behavior either in or outside of prison during the eighteen year period. The upshot is that Bell falls into both a pre-guidelines and a post-guidelines regime. The Parole Commission will increase the time that Bell must serve in prison simply because he escaped. This Parole Commission "sentence" is independent of the sentence imposed by this court for the escape.

In the Introduction to the guidelines the Sentencing Commission asserts that the basic objective of Congress in enacting the Sentencing Reform Act was "to enhance the ability of the criminal justice system to reduce crime through an effective, fair sentencing system. To achieve this objective Congress first sought *honesty* in sentencing." Federal Sentencing Guidelines Manual, Introduction at 2 (emphasis in original). The Commission elaborated on this theme, stating that Congress

sought to avoid the confusion and implicit deception that arises out of the present sentencing system which requires a judge to impose an indeterminate sentence that is automatically reduced in most cases by "good time" credits. In addition, the parole commission is permitted to determine how much of the remainder of any prison sentence an offender will actually serve. This usually results in a substantial reduction in the effective length of the sentence imposed, with defendants often serving about one-third of the sentence handed down by the court.

*Id.*

These comments suggest that Congress has rejected an indeterminate system. The terms of the Sentencing Reform Act itself support this conclusion in that § 218(a)(5) of Public Law 98–473, 98 Stat. 2027 (1984)

abolishes the Parole Commission,[2] and 18 U.S.C. § 3621 requires an offender sentenced to a term of imprisonment to remain imprisoned until the expiration of the entire term except for the time credited pursuant to 18 U.S.C. § 3624 for satisfactory behavior. As the Sentencing Commission states, "The abolition of parole makes the sentence imposed by the court the sentence the offender will serve." Federal Sentencing Guidelines Manual, Introduction at 2.

Since Bell's offenses place him within the jurisdiction of both the Parole Commission and this court, the court cannot dictate exactly the amount of time Bell will serve. The court cannot control the actions of the Parole Commission. Nevertheless, the court cannot close its eyes and ignore the practical effect of the Parole Commission's probable course of action. When Bell escaped from Sandstone he had approximately seven months left to serve until his parole date. If the court imposes a concurrent sentence for Bell's escape, the first seven months will correspond to the time which Bell would have served if he had not escaped. Any additional time imposed by the court for the escape will run concurrently with the time that Bell must serve as a result of the Parole Commission rescinding Bell's parole date and establishing a new parole date some months in the future. In contrast, a consecutive sentence for the escape would not begin to run until Bell serves the entire period of time designated by the Parole Commission.

There is no evidence that the Sentencing Commission adequately considered this conflict between pre-guideline sentences and post-guideline sentences when it drafted guideline § 5G1.3. The commentary to § 5G1.3 merely states that "[t]his section reflects the statutory presumption that sentences imposed at different times ordinarily run consecutively." The "statutory presumption" referred to by the Commission is found in 18 U.S.C. § 3584(a), and as noted above, it is not a conclusive presumption.

 The court is aware of no other courts which have addressed this issue in a published opinion and therefore can look for guidance only in the text of the statute, the sentencing guidelines and the commentary of the Sentencing Commission. Considering these sources, the court concludes that the Commission did not adequately consider the effect of guideline § 5G1.3 in a case such as Bell's. Therefore, the court will impose a concurrent sentence.

Having made these findings, the court determines that the applicable guidelines are:

| | |
|---|---|
| Total Offense Level: | 11 |
| Criminal History Score: | 6–Category III |
| Applicable Guideline Range: | 12–18 months |

### III. Sentence

Pursuant to the Sentencing Reform Act of 1984, it is the judgment of the court that the defendant shall be committed to the custody of the Bureau of Prisons to be imprisoned for a term of eighteen months. This term of imprisonment shall run concurrently with the sentence that the defendant is already serving for bank robbery. Upon release from imprisonment, the defendant shall be placed on supervised release for a period of two years. In addition, the defendant shall pay a special assessment in the amount of $50 pursuant to 18 U.S.C. § 3013.

The court imposes sentence different from that prescribed by the sentencing guidelines for the reasons set forth above. The court recognizes that the defendant is indigent. Therefore, because of the defendant's inability to pay, the court does not order the defendant to pay a fine, costs of imprisonment or costs of supervision. This sentence is sufficient, but not greater than necessary, to satisfy the purposes of sentencing.

---

**2.** Section 235(b)(1)(A), 98 Stat. 2032, keeps the Parole Commission in existence for five years after the effective date of the Sentencing Reform Act for the purpose of processing the sentences of defendants convicted of crimes occurring before November 1, 1987.