UNITED STATES of America

v.

Anthony G. MEDEIROS, Appellant.

No. 89–5296.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) Aug. 7, 1989.

Decided Aug. 18, 1989.

* Honorable Jacob Mishler, Senior United States District Judge for the Eastern District of New York, sitting by designation.

James V. Wade, D. Toni Byrd, Office of Public Defender, Harrisburg, Pa., for appellant.

James J. West, U.S. Atty., Scranton, Pa., Frederick E. Martin, Asst. U.S. Atty., Lewisburg, Pa., for appellee.

Before: SLOVITER and GREENBERG, Circuit Judges, and FISHER, District Judge.*

OPINION OF THE COURT

SLOVITER, Circuit Judge.

Anthony G. Medeiros appeals from a judgment of sentence imposed under the Sentencing Guidelines (Guidelines), promulgated by the Sentencing Commission (Commission) pursuant to 28 U.S.C. § 991 *et seq.* (Supp. II 1984), for escape from custody in violation of 18 U.S.C. § 751(a) (1982). This appeal requires us to consider whether a sentencing court has the power under 18 U.S.C. § 3553(b) (Supp. V 1987) to depart below the Guidelines on the ground that the escape involved "walking away" from a non-secure penitentiary. We are also asked to consider whether the purported double counting of the nature of the offense under Guideline sections for calculat-

* Honorable Clarkson S. Fisher, United States District Judge for the District of New Jersey, sitting

ing Offense Level and Criminal History Category in escape cases constitutes a legitimate ground for departing below the Guidelines. We find that neither of these circumstances permit deviation from the Guidelines and therefore affirm the district court's ruling that it lacked power to depart below the Guidelines on either ground. 710 F.Supp. 106.

I.

*Facts and Procedural History*

On August 30, 1988, Medeiros, while serving an eighteen-month sentence for unauthorized use of a bank card, departed without permission from the United States Penitentiary Farm Camp in Lewisburg, Pennsylvania, apparently in response to learning that his young son had been admitted to a hospital in Rhode Island for emergency treatment. On August 31, 1988, Medeiros telephoned the United States Marshals Service in Providence, Rhode Island, admitted that he had walked away from the prison camp in order to visit his son, and stated that he would return to custody. Medeiros did not surrender to the authorities, however, and was instead apprehended by the United States Marshals in Rhode Island on September 7, 1988.

Medeiros was indicted for one count of escape from an institution or facility in which he was confined by direction of the Attorney General in violation of 18 U.S.C. § 751(a). He initially pleaded not guilty to the charge but then changed his plea to guilty. The probation officer who prepared Medeiros' Presentence Report calculated his Guideline range as follows: Under section 2P1.1(a), Medeiros received a Base Offense Level score of 13 for a violation of 18 U.S.C. § 751(a). This level was adjusted downward by 2 points under section 3E1.-1(a) because Medeiros accepted responsibility for his crime, resulting in a final Offense Level score of 11.

Under the Criminal History Category, Medeiros received a total of 10 points, 7 of

by designation.

which were awarded under sections 4A1.-1(a) and (c) for sentences imposed for five prior fraud and drug offense convictions (including the one for which he was serving time at the time of his escape); 2 of which were imposed under section 4A1.1(d) for committing the offense of escape while under a criminal justice sentence; and 1 of which was imposed under section 4A1.1(e) for committing the offense of escape while in confinement on a sentence of more than sixty days. This score placed Medeiros in Criminal History Category V. This category, in conjunction with his Offense Level score of 11, placed Medeiros in the 24–30 month range under the Sentencing Table. *See* 18 U.S.C.A. App. Chapter Five, Part A (West Supp.1989) (Federal Sentencing Guidelines).

Medeiros did not contest these calculations or the facts on which they were based, but submitted objections to the Presentence Report on the ground that the Commission had not adequately taken account of the difference between walking away from a non-secure institution and escaping from a secure facility. Medeiros also argued that the sentence imposed for his escape should be made concurrent with his sentence for bank fraud, and, in his reply brief, argued that the Commission failed to adequately consider the interaction in escape cases between Guideline section 2P1.1, which set his Offense Level, and sections 4A1.1(d) and 4A1.1(e), under which additional points were added to his Criminal History score because he committed his offense while under sentence for, and less than two years after, the commission of another crime.

The district court held a sentencing hearing at which it considered Medeiros' arguments and his account of the facts of his case. The court accepted *arguendo* Medeiros' claim that he attempted to gain the attention of an official at the farm camp after hearing that his son was ill but the official "brush[ed] him off," and that Medeiros only afterwards walked away from the camp and went to see his son without attempting to speak with any other official. App. at 95. The court found Medeiros' failure to attempt to consult with anyone

else "very damaging," *id.*, and concluded that the exigent circumstances alleged by Medeiros were not sufficiently atypical to warrant a downward departure from the Guideline range.

The court rejected Medeiros' arguments that the Sentencing Commission failed to give adequate consideration to the fact that escape from a secure facility involved more serious criminal behavior than walking away from a non-secure institution, and that the nature of the offense was calculated both in the Offense Level and Criminal History Category. Finally, the court rejected Medeiros' request that his sentence for escape be imposed concurrently with his sentence for fraud, a decision which Medeiros does not contest on appeal.

In the same order denying Medeiros' motion for a departure from the Guideline sentencing range, the court entered a Judgment and Commitment Order imposing on Medeiros the minimum sentence—24 months—allowable under the Guidelines, to be served consecutively with the rest of his sentence for fraud.

## II.

### *Discussion*

On appeal from this order, Medeiros does not contest that his sentencing range was calculated correctly under the Guidelines, but instead argues that the sentencing court erred in concluding that it did not have the power to deviate downward from the Guidelines.

■ We have jurisdiction under 28 U.S.C. § 1291 (1982) and 18 U.S.C. § 3742(a)(2) (Supp. V 1987) ("defendant may file a notice of appeal in the district court for review of an otherwise final sentence if the sentence … was imposed as a result of an incorrect application of the sentencing guidelines issued by the Sentencing Commission"). We find no merit in the government's suggestion that we may lack jurisdiction to review Medeiros' sentence because it was within the Guidelines, *see* Appellee's Brief at 5 n. 3, and note that the case relied on by the government, *Unit-*

ed States v. Buenrostro, 868 F.2d 135, 137 (5th Cir.1989), is inapposite since it discusses only standards of review. Medeiros argues that the district court misconstrued a federal statute in ruling that it was without power to deviate from the Guidelines. Patently, that is within our jurisdiction.

The Sentencing Reform Act confines the circumstances under which a sentencing court may depart from the Guidelines as follows:

> The court shall impose a sentence of the kind, and within the range, referred to in subsection (a)(4) unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.

18 U.S.C. § 3553(b) (Supp. V 1987). We have held that this provision is mandatory and no departure is permitted if the Sentencing Commission adequately took into consideration the circumstance in question. United States v. Uca, 867 F.2d 783, 786 (3d Cir.1989). We have also recognized that the Commission envisioned that departure from the Guidelines would be permissible in "an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm," United States v. Ryan, 866 F.2d 604, 607 (3d Cir.1989) (quoting Guidelines, Chapter 1, Part A, section 4(b)), though such departures should be undertaken rarely so as not to hinder the Guidelines' goal of uniformity of treatment. See Uca, 867 F.2d at 787.

In deciding whether a departure from the Guidelines is legally permissible under section 3553(b), our review is plenary. Uca, 867 F.2d at 786; Ryan, 866 F.2d at 610. In circumstances in which departure is legally authorized, "the district courts are entitled to exercise a substantial amount of discretion in determining whether to depart from the guidelines." Id. at 610. Thus, we must decide whether departure from the Guidelines is legally permissible for the reasons Medeiros offers.

## A.

### Escape from Non-secure vs. Secure Facilities

■ To succeed in his challenge based on the non-secure classification of the facility from which he escaped, Medeiros must show that the Sentencing Commission did not adequately take into consideration the difference between "walking away" from a non-secure camp and escaping from a secure prison. Medeiros gives two reasons as support for this claim.

First, he seems to be contending that walking away from a non-secure institution is inherently a lower level offense than escape from a secure institution. That does not necessarily follow as a matter of logic, however, because a prisoner who walks away from a non-secure institution may be viewed as violating the trust placed in him or her by the officials who designated the place where the sentence was to be served. Even more telling, however, is the point made by the district court which, in rejecting Medeiros' argument, noted that the kinds of serious criminal behavior likely to be involved in an escape or attempted escape from a secure institution, such as conspiracy with others, the threat or use of violence, possession of contraband, and damage to federal property, constitute separate federal offenses or grounds for an enhanced sentence under the Guidelines. Therefore, escapes from secure facilities would generally result in the assignment of a higher imprisonment range than that applied for walking away from a non-secure facility, and there is no apparent reason to otherwise distinguish between the identical conduct of escape on the basis of the security classification of the penitentiary.

In addition, Medeiros' argument that the Commission did not adequately consider the difference between escape from secure and non-secure institutions is belied by section 2P1.1(b)(2), which states:

> If the defendant escaped from non-secure custody and returned voluntarily within ninety-six hours, decrease the offense level under § 2P1.1(a)(1) by 7 lev-

els or the offense level under § 2P1.1(a)(2) by 4 levels.

18 U.S.C.A. App. § 2P1.1(b)(2) (West Supp. 1989). Because this section explicitly provides for reduced scoring only when escapes are from non-secure institutions, it shows that the Sentencing Commission was willing to make a distinction between escapes from secure and non-secure facilities under specified circumstances. Although Medeiros was not eligible for a reduction in Offense Level under this section because he did not return voluntarily within the requisite time, we see no basis for concluding that the Commission did not adequately consider the possibility that escapes from non-secure facilities should be treated more leniently.

The second reason Medeiros points to in support of his argument that the Commission did not adequately consider the distinction between escapes from secure and non-secure institutions in promulgating the initial Guidelines is a March 3, 1989 request by the Sentencing Commission for comment on whether it should reduce the base Offense Level for escapes from non-secure facilities. *See* 54 Fed.Reg. 9,151–52 (1989). We note, however, that on May 17, 1989, the Commission published its final amendments to the Guidelines, formally approved by the Commission (subject to Congressional review) following the completion of the public comment and hearing process regarding the initial proposed amendments cited by Medeiros. *See* 54 Fed.Reg. 21,348 (1989). Since the Commission's final amendments do not include the initial proposed amendment on which Medeiros relies, *see id.* at 21,371–72, the Commission obviously rejected the proposal on further consideration. Medeiros' argument that the Commission has not considered the issue therefore fails without question.

Moreover, this development shows the flaw in arguments for discretionary departure from the Guidelines predicated on proposed amendments. Although, as we noted in *United States v. Ofchinick,* 877 F.2d 251 (3d Cir.1989), an amendment to a Guideline, approved by the Commission, which was "intended to clarify the existing guideline" might be given substantial weight in determining the meaning of the Guideline in effect before the amendment, *id.* at 257 n. 9, the fact that the Commission has invited public comment on a proposed change in no way indicates that it will in fact adopt this change. Any presumption to the contrary would precipitate departures from the Guidelines before the Commission had made a decision. This might deter it from proposing potential amendments which could impair its responsibility to monitor the operation of the Guidelines and make revisions when necessary. We hold, therefore, that the existence of a proposal for amendment to the Guidelines is not a legitimate ground for departure from them and that the district court correctly concluded that it was without power to depart below the Guidelines ʌn the ground that the escape was from a non-secure facility.

### B.

### *"Double Counting" in Escape Cases*

■ Medeiros' second challenge to the district court's ruling that it lacked the power to depart below the Guidelines because of the alleged double counting of the escape is conclusively disposed of by our recent decision in *Ofchinick,* 877 F.2d at 255–57.

The Guidelines for calculating the Criminal History Category instruct the sentencing court to:

(d) Add 2 points if the defendant committed the instant offense while under any criminal justice sentencing, including probation, parole, supervised release, imprisonment, work release, or escape status.

(e) Add 2 points if the defendant committed the instant offense less than two years after release from imprisonment on a sentence counted under (a) or (b). If 2 points are added for item (d), add only 1 point for this item.

18 U.S.C.A. App. § 4A1.1(d) & (e) (West Supp.1989).

As Medeiros points out, these provisions result in the addition of 3 points to the criminal history score of any offender sen-

tenced for escape from prison while serving a sentence of more than sixty days. Medeiros claims that the Sentencing Commission failed to consider the effect in escape cases of this "interplay" or double consideration of the nature of the offense to calculate the points awarded both under Offense Level and Criminal History Category. Therefore, Medeiros reasons, sentencing courts may adjust for this effect by departing below the Guidelines in escape cases.

Although the courts are divided on this issue, *see, e.g., United States v. Bell*, 716 F.Supp. 1207 (D.Minn.1989) (Commission did not adequately consider effect of section 4A1.1(d) in escape cases), this circuit has taken a position contrary to that advanced by Medeiros. In *Ofchinick*, 877 F.2d at 255–57, we rejected Ofchinick's contention that the increase of 3 points in his criminal history for his escape was inconsistent with the statute or due process. In reviewing the double counting challenge to application of section 4A1.1(d), we held that the Guidelines reflect the Commission's judgment that the commission of another criminal offense, including escape, a short time after being convicted merits more severe treatment than commission of the offense by itself, and that such a result is not unreasonable or arbitrary. *See also* Guidelines Chapter Four Introductory Commentary ("A defendant with a record of prior criminal behavior is more culpable than a first offender and thus deserving of greater punishment.") We therefore reject Medeiros' contention that the interactive effect of sections 2P1.1(a), and 4A1.1(d) & (e) constitutes a permissible ground for departure from the Guidelines under 18 U.S.C. § 3553(b).

Medeiros does not press his argument on appeal that the circumstances of his departure from the Farm Camp were sufficiently atypical to justify downward departure from the Guidelines, a finding by the district court which is in any event entitled to deference by this court in the absence of an abuse of discretion or clearly erroneous finding of fact by that court. *See Ofchin-*

*ick*, 877 F.2d at 254. We find no such error in the district court's statement of reasons for declining to depart from the Guidelines on this ground, and will therefore affirm the district court's order imposing the 24–month sentence on Medeiros.

### III.

For the reasons stated above, we will affirm the district court's order.