### UNITED STATES of America

v.

### Stanford BROWN.

### Crim. No. 89–00302–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Dec. 29, 1989.

Dennis M. Kennedy, Asst. U.S. Atty., Alexandria, Va., for plaintiff.

Alan S. Toppelberg, Annandale, Va., for defendant.

## SENTENCING MEMORANDUM

ELLIS, District Judge.

### INTRODUCTION

Defendant is before the Court for sentencing after pleading guilty on October 20, 1989 to a charge of escape, in violation of 18 U.S.C. § 751.

The record reflects that on March 25, 1988, defendant was sentenced in the District of Columbia Superior Court to two (2) years probation under the provisions of the Youth Act. This sentence was imposed after a plea to a misdemeanor charge of carrying a pistol. The record further reflects that defendant's probation was revoked on June 16, 1989, at which time he was sentenced to a term of incarceration of 180 days. On June 24, 1989, defendant escaped from the minimum security facility at the Lorton Reformatory, Lorton, Virginia. He was subsequently located at the D.C. jail on September 28, 1989, under the name of Kevin Kirkland, after having been arrested on a PCP possession charge. This charge was "no papered" in the District of Columbia.

Defendant claims he was compelled to escape out of fear for his safety. The record reflects that defendant was the victim of a stabbing at the Lorton facility in February 1989. He claims the guards ignored his expressions of concern for his safety.

Pursuant to 18 U.S.C. § 3553, the Court sets forth the following findings and reasons in connection with the sentence imposed on STANFORD BROWN on December 29, 1989.

### A. Uncontested Matters:

With the exception of the matter considered in Part B, the parties had no objections to the Presentence Investigation Report ("PSIR"). Accordingly, except as noted in Parts B and D, the Court adopts the PSIR's findings and conclusions as its findings and conclusions in this sentencing proceeding.

### B. Contested Matters:

Defendant contests the criminal history calculation. Specifically, defendant argues that it is inappropriate in the case of an escape conviction to add two (2) criminal history points under § 4A1.1(d) for committing the offense while serving a criminal justice sentence. This, he contends, is double counting. The Sentencing Commission, in defendant's view, simply failed to consider the effect of the interplay between the offense level and criminal history calculations in escape cases.

This issue has not been addressed by the Fourth Circuit. Other courts are divided on it. At least two district courts have held that the addition of two (2) criminal history points under § 4A1.1(d) amounts to impermissible double counting in inmate escape cases. *See United States v. Bell,* 716 F.Supp. 1207 (D.Minn.1989) (Commission did not adequately consider effect of

*Guidelines Manual* 4A1.1(d) in cases of escape); *United States v. Clark,* 711 F.Supp. 736 (S.D.N.Y.1989) (same). The Third, Fifth and Tenth Circuits have reached the opposite conclusion and have done so on the basis of persuasive reasoning. *See United States v. Vickers,* 891 F.2d 86 (5th Cir.1989); *United States v. Medeiros,* 884 F.2d 75 (3d Cir.1989); *United States v. Goldbaum,* 879 F.2d 811 (10th Cir.1989); *United States v. Ofchinick,* 877 F.2d 251 (3d Cir.1989); *United States v. Jimenez,* 708 F.Supp. 964 (S.D.Ind.1989). *Medeiros* is directly in point. There, a defendant serving an eighteen (18) month sentence walked away from a minimum security facility. He escaped, the defendant explained, after learning that his son was hospitalized, and after prison officials ignored defendant's efforts to obtain more information concerning his son's health. Like defendant in the instant case, the *Medeiros* defendant was subject to a Guidelines sentencing range for escape that was more severe than the sentence he was serving. On these facts, the Third Circuit held proper the addition of two (2) criminal history points for committing an offense, *i.e.,* the escape, while serving a sentence.[1] The same result should obtain here.

The heart of defendant's argument is that the Sentencing Commission failed to recognize that the offense level established for escapes already account for the defendant's incarcerated status and, therefore, adding two (2) criminal history points under § 4A1.1(d) amounts to double counting. The Guidelines refute this argument. Section 2P1.1 sets thirteen (13) as the base offense level for all escape offenses, those committed by non-inmates, as well as those committed by inmates. Thus, inmates who escape and non-inmates who instigate or assist escapes are both assigned a base offense level of thirteen (13). Given this, it is evident that the Sentencing Commission did not intend the base offense level of thirteen (13) to account for a defendant's incarceration status at the time of the offense. Instead, the Sentencing Commission designed § 4A1.1(d) to account for a defendant's incarceration status. To hold otherwise would lead to an anomalous result: an escaped inmate, whose only criminal history is the offense for which the inmate was in custody when the inmate escaped,[2] would be subject to the same sentencing range as a person not in custody, who had no criminal history, but who assisted in an inmate's escape. Section 4A1.1(d) avoids this anomaly; it properly requires the addition of two (2) criminal history points in the case of escape offenses committed by inmates.

Additional support for this result is found in the criminal history portion of the *Guidelines Manual.* Thus, § 4A1.2 provides for the exclusion of certain prior sentences from the criminal history calculation, but significantly makes no mention whatever of the circumstances at bar. There is no exclusion for sentences being served at the time of the offense. Moreover, the § 4A1.1 Application Notes refer to certain sentences that are not to be counted; but, it, too, makes no reference to sentences being served at the time the offense is committed. The inference invited by these omissions is that the Sentencing Commission did not intend to preclude from § 4A1.1(d) from operating in the cases where the defendant is an inmate at the time of the escape. In sum, the Court concludes that use of a two (2) point enhancement to the criminal history calculation under § 4A1.1(d) in cases where defendant is an inmate is appropriate; it does not amount to impermissible double count-

---

**1.** The Third Circuit also affirmed the district court's ruling denying a departure sought on the ground that the Sentencing Commission had not adequately taken into account the distinction between escapes from secure facilities and escapes from non-secure facilities. In reaching this conclusion, the court held that the existence of a proposal for amending the Guidelines to recognize this distinction was not a legitimate departure basis. *Medeiros,* 884 F.2d at 78–9.

The district court further concluded that Medeiros' exigent circumstances—his son's illness and the indifference of one official—were not sufficiently "atypical" to warrant a downward departure. *Id.* at 77. This ground was not pressed on appeal. *Id.* at 80.

**2.** Or when an inmate instigated or aided another inmate's escape.

ing. The terms and structure of the Guidelines refute defendant's claim that the Sentencing Commission intended otherwise.

### C. *Conclusions:*

1. The defendant's adjusted offense level is 13.

2. The defendant's offense level total is 11.

3. The defendant's criminal history category is IV.

4. The range of punishment under the Guidelines is 18 to 24 months, with a term of 1 year supervised release authorized, but not required.

5. The Guidelines range of fines is $2,000 to $1,000,000, with an additional statutory special assessment of $50. 18 U.S.C. § 3013(a)(2)(A).

6. Probation is not authorized.

### D. *Motion for Departure:*

■ Defendant contends, and the government agrees, that the defendant's criminal history category IV significantly overstates the seriousness of defendant's criminal history. The Court agrees. Defendant's criminal history is manifestly less serious than that of defendants typically labeled category IV. With only one juvenile conviction and one adult conviction for which probation was granted, defendant's criminal history more closely resembles that of a defendant's criminal history category III. In these circumstances, it is appropriate for the Court to depart downward and in doing so, the Sentencing Commission "intends that the court use, as a reference, the Guideline range for a defendant with a ... lower criminal history category, as applicable." *Guidelines Manual* § 4A1.3 (Policy Statement). Accordingly, the Court grants defendant's request for a downward departure and concludes that criminal history category III is the proper reference here. Given defendant's offense level total of eleven (11), and his criminal history category adjusted to III, the Guideline range shifts downward to twelve (12) to eighteen (18) months. For the reasons stated, the Court will select a sentence within this range.

■ Defendant also contends the Court should depart downward on the ground that the defendant's stabbing and fear for personal safety at Lorton constitutes "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission...." 18 U.S.C. § 3553(b). The Court rejects this argument. It is doubtful that defendant adequately or effectively expressed his safety concern to Lorton officials. Even assuming otherwise, it is significant to note that more than four (4) months elapsed between the stabbing and the escape. Equally significant is the fact that when defendant escaped he did not turn himself in to other authorities but instead evaded authorities for three (3) months, ultimately coming to the attention of the authorities only when he was arrested on a PCP charge under an assumed name. This conduct is inconsistent with that of a person whose motive for escape is limited to a fear for his personal safety. Defendant has not presented the kind of atypical exigent circumstances that constitute a basis for a downward departure. *Cf. Medeiros,* 884 F.2d at 80. (district court found illness of family member not "sufficiently atypical" to justify a downward departure) Accordingly, the Court concludes that this ground for departure is meritless.

### E. *Sentence Imposed:*

The Court commits defendant to the custody of the Bureau of Prisons for a period of twelve (12) months. This sentence is to run consecutive to any sentence heretofore imposed on defendant. Upon release from confinement, defendant is to serve a one (1) year term of supervised release. As a special condition of the supervised release, defendant is to participate in and successfully complete a program of drug testing and drug rehabilitation at the direction and discretion of the probation office.

A special assessment of $50 is imposed pursuant to 18 U.S.C. § 3013(a)(2)(A).

No fine is imposed nor are the costs of incarceration or supervised release charged

to defendant given his lack of assets and income.

Because defendant continues to express fears for his safety at Lorton and because assaults are not uncommon there, the Court orders immediate federalization of this defendant. Although defendant's escape conviction renders him a doubtful candidate for incarceration in a level I institution, the Court nonetheless recommends that the Bureau of Prisons give consideration to this option in view of defendant's youth and lack of history of potentially serious or violent crimes. Also, the Court recommends that the Bureau of Prisons incarcerate defendant at the Federal Correctional Institute at Petersburg, Virginia, as it is the closest facility to the defendant's family, including his fiance and newborn son.

F. *Statement of Reasons for the Court's Sentence:*

The sentence imposed adequately serves the goals of deterrence, retribution, incapacitation and rehabilitation. Where, as here, an offense is committed while defendant is serving a term of imprisonment, the Sentencing Guidelines counsel that the sentence for the instant offense should be imposed to run consecutively to the unexpired term of imprisonment. *See Guidelines Manual* § 5G1.3. To do otherwise would effectively erase defendant's District of Columbia sentence and thus diminish the deterrent effect of this conviction and sentence.

Copies of this Sentencing Memorandum shall be issued to all counsel of record, the Probation Office and to the United States Sentencing Commission.