**UNITED STATES of America**

v.

**Jack W. BIERLEY, Appellant.**

**No. 90–5099.**

United States Court of Appeals, Third Circuit.

Argued Nov. 6, 1990.

Decided Dec. 28, 1990.

Peter T. Campana (argued), Campana & Campana, Williamsport, Pa., for appellant.

Barbara L. Kosik (argued), Office of U.S. Atty., Scranton, Pa., for appellee.

Before HIGGINBOTHAM, Chief Judge, SLOVITER and ALITO, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

Appellant Jack Bierley pleaded guilty to knowing receipt through the mail of material containing visual depictions of minors engaging in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(2) (1988). He appeals from the judgment of sentence imposing a twelve month term of imprisonment.

We are asked to review the district court's application of the United States Sentencing Guidelines (U.S.S.G.) in (1) refusing to adjust Bierley's offense level downward under U.S.S.G. § 3B1.2 for a mitigating role in the offense as a minimal or minor participant, and (2) concluding that it had no legal authority to depart from the sentencing range it had calculated.

### I.

In May, 1988, W.R. Simpson, an undercover postal inspector engaged in a child pornography sting operation, placed an advertisement in a magazine entitled *Video Mania*, which read:

Wanted: Collector of rare, amateur erotic hard-core videos. Seeking to buy, sell, trade same. W.R. Simpson, 1579–F, Monroe Drive, N.E. 803, Atlanta, Georgia 30324.

In response, Bierley wrote to Simpson and expressed an interest in "non run-of-the-mill" and "off-beat" material, including, *inter alia*, "young stuff." App. at 178. Simpson sent back a letter stating that magazines such as *Lolita* and *Nymph Lover* were "what I have and what I am looking for." App. at 180. He included a questionnaire for Bierley to express his preferences as to subject, which included gender and age, activity displayed, and type of material sought, *i.e.*, photographs, magazines, or video tapes. Bierley checked the boxes for video tapes of girls, specifying ages nine to fourteen, engaged in vaginal and oral sex, and wrote in an interest in "females (any age) engaging in sex with animals." App. at 183.

Bierley and Simpson continued to correspond for a number of months in a friendly, chatty manner. Simpson wrote Bierley that "It's preferred that the first exchange of material be from you ... to establish that you know what you are seeking and to also assure me that you are not setting me up." App. at 185. His letters stressed the need for caution in addressing and mailing the material. Bierley responded reiterating his interest in material involving nine- to fourteen-year-old girls and described again the sexual activity which he was interested in viewing. On August 24, 1988, Simpson responded with a list of magazines that he owned, which were available for $15 apiece. His letter graphically described the poses and sexual activity of the young subjects contained in each magazine. Bierley wrote back seeking a lower price for quantity. He expressed concern for a safe way of dealing because he had just read of a man arrested "in a child porno sting" for buying a tape through the mail, which he said he hadn't known was illegal. App. at 200.[1] Simpson responded that only the four *Lolita* magazines were left and offered a discount price of $40 for four. He wrote that Bierley's "concern for a safe way of dealing is ... valid" and explained that he usually sent the material in a plain brown paper padded envelope without a return address. App. at 202. Bierley sent payment for the four issues of *Lolita* magazine.

On February 2, 1989, Simpson mailed Bierley the magazines. They were delivered to Bierley's home on February 6. Shortly thereafter, postal inspectors appeared with a warrant to conduct a search

---

1. In a later letter, written before he placed the order, Bierley wrote that "the fact that it is illegal also makes it more exciting, I guess." App. at 214.

of the residence. They recovered the magazines in question, discovering no other child pornography.

Bierley was charged by a grand jury with one count of "willfully and knowingly receiv[ing] and caus[ing] to be delivered by mail, visual depictions of minors engaging in sexually explicit conduct," in violation of 18 U.S.C. § 2252(a)(2). After consulting with his lawyer, Bierley pleaded guilty.

The Presentence Report prepared by a U.S. Probation Officer under the Sentencing Guidelines calculated the base offense level for violation of 18 U.S.C. § 2252(a)(2) at 13, U.S.S.G. § 2G2.2; increased the offense level by two levels because the material included depictions of prepubescent minors, U.S.S.G. § 2G2.2(b)(1); and adjusted the offense level downward two levels for admission of guilt and acceptance of responsibility, U.S.S.G. § 3E1.1(a). The district court decided that a downward adjustment for a mitigating role in the offense was inapplicable. Thus, the ultimate offense level was determined to be 13.

Because Bierley had no criminal history, he was in Criminal History Category I and faced a sentencing range of twelve to eighteen months. The district court then considered the legal issue of whether it had the power to depart from that sentencing range. It pointed to a number of factors that it thought merited a downward departure, but stated:

> The Court is of the view that the totality of the ... mitigating circumstances are not sufficient to permit this Court to depart downward from the Guidelines. If under these facts the Court has the authority to depart from the Guidelines, the Court would impose a sentence substantially below the Guidelines.

App. at 226.

The district court therefore imposed a term of imprisonment of twelve months, the lowest sentence within the calculated range, and levied a fine of $3,000 and an obligatory special assessment of $50.

We have jurisdiction over Bierley's appeal from the district court's judgment of sentence pursuant to 18 U.S.C. § 3742(a) (1988) and 28 U.S.C. § 1291 (1988).

## II. *Discussion*

We will consider first whether the district court erred in its calculation of the guideline range when it concluded that U.S.S.G. § 3B1.2, which allows a 2 to 4 level downward adjustment in offense level for a mitigating role, was inapplicable. Thereafter, we will turn to Bierley's argument that the court erred in concluding that it did not have the legal authority to depart downward from the Guideline's recommended sentencing range.

### A. *Adjustment*

■ The proper standard of review for a district court's conclusion that an adjustment under the Guidelines is inapplicable depends on the mixture of fact and law necessary to that court's determination. *United States v. Ortiz*, 878 F.2d 125, 126–27 (3d Cir.1989); *see* 18 U.S.C. § 3742 (1988). Where the decision is grounded on an essentially factual basis, we defer to the district court's findings and reverse only for clear error. However, if the alleged error is legal, the issue should be reviewed de novo. *Id.; see also United Stated v. Daughtrey*, 874 F.2d 213, 217 (4th Cir. 1989); *Cf. United States v. Mejia–Orosco*, 867 F.2d 216, 220–21 (5th Cir.) (role in the offense is a factual determination, albeit complex; a district court decision not to apply an adjustment based on such a determination reversed only for clear error), *cert. denied,* —— U.S. ——, 109 S.Ct. 3257, 106 L.Ed.2d 602 (1989). Because the district court's denial of an adjustment was based on a legal interpretation of the Guidelines rather than a factual determination of Bierley's role in the offense, we engage in plenary review.

In Chapter 3, Part B, the United States Sentencing Commission, pursuant to 28 U.S.C.A. § 994(d)(9) (West Supp.1990), provided for adjustment of a defendant's offense level predicated on his or her role in the offense. *See* U.S.S.G. § 5H1.7. If the defendant plays an aggravating role in the offense, an upward adjustment may be warranted under § 3B1.1, the Aggravating Role Guideline, which provides:

Based on the defendant's role in the offense, increase the offense level as follows:

(a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.

(b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.

(c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.

U.S.S.G. § 3B1.1

A defendant's mitigating role as a minor or minimal participant in concerted activity justifies a downward adjustment under § 3B1.2. The Mitigating Role Guideline provides:

Based on the defendant's role in the offense, decrease the offense level as follows:

(a) If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.

(b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels.

In cases falling between (a) and (b), decrease by 3 levels.

U.S.S.G. § 3B1.2

Both the Aggravating and Mitigating Role Guidelines use the term "participant," which is defined in the Commentary to § 3B1.1 as follows: "A 'participant' is a person who is criminally responsible for the commission of the offense, but need not have been convicted." U.S.S.G. § 3B1.1, comment. (n. 1).

█ The district court concluded that the Mitigating Role Guideline, § 3B1.2, was not applicable to Bierley "because Bierley is the only Defendant in this crime." App. at 221. However, the fact that there is only one "defendant" does not necessarily mean that there was only one "participant." For example, other persons criminally responsible for the offense may not have been apprehended, or may have cooperated with the government and never been charged. Thus, there are situations where a sole defendant may be subject to adjustment of offense level upward or downward under Chapter 3, Part B. In this case, Bierley could be viewed as taking part in concerted activity involving an agreement to mail and receive material depicting children in sexually explicit conduct. However, Simpson, the only person with whom Bierley dealt, was an undercover government agent who was not criminally responsible. Thus, Bierley was not only the sole defendant, he was also the sole "participant," as that term is defined in the Guidelines.

█ We must therefore consider whether an adjustment for role in the offense is available under §§ 3B1.1 or 3B1.2 for the sole participant in an offense. The Introductory Commentary to Chapter 3, Part B explains that "[w]hen an offense is committed by more than one participant, § 3B1.1 or § 3B1.2 (or neither) may apply." U.S.S.G. Ch. 3, Pt. B, intro. comment. Similarly, the commentary to § 3B1.4 states that "[m]any offenses are committed by a single individual or by individuals of roughly equal culpability so that none of them will receive an adjustment under [Part B]." U.S.S.G. § 3B1.4, comment. This commentary strongly suggests a threshold requirement of more than one criminally responsible participant for any adjustment in offense level under §§ 3B1.1 or 3B1.2, whether the departure is upward or downward, despite the absence of an explicit statement to that effect in § 3B1.1(c) and § 3B1.2.

█ This follows because the adjustments authorized for role in the offense are directed to the relative culpability of participants in group conduct. *See United States v. Daughtrey*, 874 F.2d at 216. As the court stated in *United States v. Gordon*, 895 F.2d 932, 935 (4th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 131, 112 L.Ed.2d 98 (1990), "mitigating role adjustments apply only where there has been group conduct and a particular defendant is less culpable than other members of the

group to such a degree that a distinction should be made at sentencing between him and the other participants." In *Gordon*, the court reversed the district court's downward adjustment of two points for a defendant who claimed he was merely a drug courier, because the defendant produced neither evidence of participation by anyone else nor the scope of his own involvement with another participant. *Id.* at 936.

Of the three subsections under § 3B1.1 dealing with an upward adjustment, two subsections, (a) and (b), apply by their language only if the criminal activity involved "five or more participants or was otherwise extensive." In contrast, subsection (c), which authorizes an upward adjustment for an "organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b)," does not explicitly require more than one participant. Its construction, therefore, presents an issue analogous to that we have here in interpreting the downward adjustment of § 3B2. Because the language of §§ 3B1.-1(c) and 3B1.2 is arguably ambiguous in light of the failure to explicitly require a second "participant," we must attempt to ascertain the Sentencing Commission's intent. We can best determine that intent in this instance by reference to the applicable commentary.

Several courts of appeals have relied on that commentary to hold that more than one participant is necessary for a § 3B1.1(c) adjustment, and have declined to permit an upward adjustment where only one culpable individual was involved. *See United States v. DeCicco*, 899 F.2d 1531, 1535–36 (7th Cir.1990); *United States v. Tetzlaff*, 896 F.2d 1071, 1075 (7th Cir.1990); *United States v. Carroll*, 893 F.2d 1502, 1509 (6th Cir.1990).

■ We recognize that at least one court has declined to follow the commentary, and permitted an upward adjustment even though only one "participant" was involved. *See United States v. Anderson*, 895 F.2d 641 (9th Cir.) (declining to apply

Guidelines commentary as to "participant" for purposes of upward adjustment under § 3B1.1(c) where word was not explicitly included), *reh'g granted*, 911 F.2d 380 (9th Cir.1990). We agree, however, with the dissent in that case that the commentary should be regarded "as an integral part of the Guidelines package." *Id.* at 647 (Kozinski, J., dissenting). *See United States v. Ofchinick*, 877 F.2d 251, 257 (3d Cir. 1989) (Commission commentary is a more accurate reflection of its intent in promulgating the Guidelines than ordinary legislative history.).

In summary, although the Commission could have chosen to permit adjustments under the Role in the Offense Guideline without reference to the number of "participants" involved, the Guideline as we interpret it does not do so. We find persuasive the suggestion in the Guideline Commentary that there must be more than one "participant" for any mitigating adjustment for Role in the Offense under U.S.S.G. § 3B1.2. Thus, we conclude that the district court did not err in calculating Bierley's Guideline range without downward adjustment under § 3B1.2.

### B. *Departure*

■ Before we analyze Bierley's challenge to the district court's failure to depart, we must consider the impact of our holding in *United States v. Denardi*, 892 F.2d 269, 272 (3d Cir.1989), that we have no jurisdiction to review a district court's discretionary decision not to depart from the Guidelines. However, we recognized in *Denardi* that when the district court's decision not to depart is predicated on the legally erroneous impression that it did not have the authority to do so, we may review that decision. *Id.* at 272; *see also United States v. Medeiros*, 884 F.2d 75, 77–78 (3d Cir.1989). In this case, the district court adduced a number of factors which it thought pointed to a downward departure but which it said were, in totality, insufficient to support departure under the Guidelines.[2] Because the district court explicitly

---

**2.** These factors included the fact that the government was the supplier of the only incrim-

inating material found in Bierley's house; Bierley's lack of any other criminal involvement;

based its decision not to depart on its understanding that it lacked legal authority to do so, we review the issue as a matter of law.

■ A sentencing court has general authority to depart from the Guidelines if "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C.A. § 3553(b); *see also* U.S.S.G. § 5K2.0. If the court determines that the Sentencing Commission fully considered a factor in formulating the Guidelines, the court may not depart from the Guidelines even if it disagrees with the Commission's determinations. *See, e.g., United States v. Pharr*, 916 F.2d 129 (3d Cir.1990) (departure unavailable because drug dependency considered and rejected by Sentencing Commission in formulating Guidelines).

If a case is atypical, or for some other reason falls outside the scope of cases considered by the Sentencing Commission, the Guidelines have fairly expansive language allowing for discretionary departure:

> Circumstances that may warrant departure from the guidelines pursuant to [18 U.S.C. § 3553(b) ] cannot, by their very nature, be comprehensively listed and analyzed in advance. The controlling decision as to whether and to what extent departure is warranted can only be made by the courts.... Any case may involve factors in addition to those identified that have not been given adequate consideration by the Commission. Presence of any such factor may warrant departure from the guidelines, under some circumstances, in the discretion of the sentencing court. Similarly, the court may depart from the guidelines, even though the reason for departure is taken into consideration in the guidelines (*e.g.*, as a specific offense characteristic or other adjustment), if the court determines that, in light of unusual circumstances, the

guideline level attached to that factor is inadequate.

....

> ... [A] factor may be listed as a specific offense characteristic under one guideline but not under all guidelines. Simply because it was not listed does not mean that there may not be circumstances when that factor would be relevant to sentencing.

U.S.S.G. § 5K2.0.

Furthermore, in the portion of the Introduction to the Guidelines entitled "The Guidelines' Resolution of Major Issues (Policy Statement)," the Sentencing Commission addresses its departure policy in some detail:

> When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted ... *[T]he Commission does not intend to limit the kinds of factors, whether or not mentioned anywhere else in the guidelines, that could constitute grounds for departure in an unusual case.*
>
> The Commission has adopted this departure policy for two reasons. First, it is difficult to prescribe a single set of guidelines that encompasses the vast range of human conduct potentially relevant to a sentencing decision. The Commission also recognizes that the initial set of guidelines need not do so. The Commission is a permanent body, empowered by law to write and rewrite guidelines, with progressive changes, over many years. By monitoring when courts depart from the guidelines and by analyzing their stated reasons for doing so and court decisions with references thereto, the Commission, over time, will be able to refine the guidelines to specify more precisely when departures should and should not be permitted.
>
> Second, the Commission believes that despite the courts' legal freedom to de-

---

the unlikelihood of any criminal conduct in the future; Bierley's attribution of his involvement in the offense to his strong interest in collecting highly unusual objects, an interest at least par-

tially supported by the probation officer's report of unusual objects in the home; and Bierley's steady, long-term employment in a job he would lose if incarcerated.

part from the guidelines, they will not do so very often.

U.S.S.G. Ch. 1, Pt. A, 4(b) (emphasis added).

In *United States v. Ryan,* 866 F.2d 604, 609 (3d Cir.1989), we read those sections to "suggest ... that the sentencing court has been given a good deal of discretion in deciding whether to depart from the guidelines, in part because the Commission seeks to monitor such departures and, over time, create more accurate guidelines." *See also United States v. Kikumura,* 918 F.2d 1084, 1099 (3d Cir.1990); *United States v. Roberson,* 872 F.2d 597, 601–02 (5th Cir.), *cert. denied,* —— U.S. —— 110 S.Ct. 175, 107 L.Ed.2d 131 (1989); *United States v. Correa–Vargas,* 860 F.2d 35, 37–38 (2d Cir. 1988).

 Recently, the Court of Appeals for the First Circuit decided two cases in which it held that the district court had no power to depart downward from the sentencing range prescribed for defendants convicted of receiving or mailing child pornography in violation of 18 U.S.C. § 2252(a)(2). *See United States v. Studley,* 907 F.2d 254 (1st Cir.1990) (no authority for downward departure on grounds of limited deviancy, little risk to community, posture of rehabilitation, or unexceptional treatment situation); *United States v. Deane,* 914 F.2d 11 (1st Cir.1990) (no authority for downward departure on grounds of passive conduct, no evidence of nor tendency toward pedophilia, or unexceptional treatment situation). The court believed that most of the factors raised had been considered and rejected by the Sentencing Commission, and that any other factor was not sufficiently exceptional so as to warrant departure.

However, neither of those cases nor, as far as we know, any reported case considered whether departure could be predicated on an analogy to § 3B1.2 (authorizing an adjustment for a mitigating role in the offense) in the adventitious circumstance that the defendant's concerted activity involved only one other person who does not satisfy the definition of a "participant." If the Guidelines authorize departure in "an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm," Ch. 1, Pt. A, 4(b), *a fortiori* they authorize departure in an atypical case where an adjustment would otherwise be authorized for the same conduct but, for linguistic reasons, the adjustment Guideline does not apply. That is to say, the fortuitous fact that § 3B1.2 linguistically could not apply to Bierley because Simpson was not a criminally responsible "participant" does not render Bierley's conduct significantly different from that of a defendant in similar circumstances who might qualify for an offense role adjustment. Indeed, it makes little sense to authorize departure for a defendant who procured material from a nationwide child pornography ring but not for a defendant whose supplier was an undercover postal inspector.

We have found no indication in the Guidelines that the Sentencing Commission has considered and rejected departure from the Guidelines when there is a close analogy to an adjustment for Role in the Offense. This type of departure, however, is consistent with the Commission's approach. As it noted in its Introduction, quoted above, there are instances in which the Guidelines expressly provide specific guidance for departure by analogy in either a Special Instruction or Application Note. The same introductory section refers to a broader "unguided" departure which can rest on the non-exhaustive list of grounds referred to in Chapter Five, Part K or "on grounds not mentioned in the guidelines." Ch. 1, Pt. A, 4(b).

Some courts have recognized their discretion in this regard. In this court's recent opinion in *Kikumura,* 918 F.2d 1084, 1113, we held that an offense-related upward departure was legally permissible for intent to murder by using "analogic reasoning." In *United States v. Crawford,* 883 F.2d 963, 966 (11th Cir.1989), the court affirmed an upward departure for a defendant both because of the amount of narcotics possessed and for her role in the offense, stating, "[w]e do not believe that a sentencing judge is precluded from considering a

defendant's role in the offense [in departing from the Guidelines] merely because her action did not rise to the level of an aggravating role, as defined by guideline 3B1.1." Similar reasoning must necessarily be available for departure downward. Accordingly, we hold that when an adjustment for Role in the Offense is not available by strict application of the Guideline language, the court has power to use analogic reasoning to depart from the Guidelines when the basis for departure is conduct similar to that encompassed in the Role in the Offense Guideline.

It is, of course, important to emphasize the limited nature of the departure we authorize today. First, departure for almost all of the reasons which would ordinarily be relied on as entailing mitigating circumstances is expressly precluded. The court cannot take into account race, sex, national origin, creed, religion, and socio-economic status, *see* § 5H1.10, physical condition, including drug dependence and alcohol abuse, *see* § 5H1.4, and economic hardship, *see* § 5K2.12.

Second, the departure by analogy to the Mitigating Role in the Offense Guideline, § 3B1.2, can only apply in the unusual case when there is "concerted activity"[3] but only one "participant." If there is more than one "participant," as is usually the case, for example, when a government agent infiltrates a drug operation, there can be no departure by analogy because the adjustment guideline is applicable of its own force.

Finally, we believe the courts' actions will justify the Commission's confidence that "despite the courts' legal freedom to depart from the guidelines, they will not do so very often." Ch. 1, Pt. A, 4(b). Depar-

ture is reserved for "rare occurrences." *Id.* Under the departure methodology recently set forth in *Kikumura*, 918 F.2d at 1110, even if a departure by analogy is warranted, the district court should ordinarily do so only to the extent of the most nearly analogous Guideline. Thus, in this case the court would be limited to the 2 to 4 level adjustment downward on the bases set forth in § 3B1.2.

We are cognizant that the sentencing guideline applicable to Transporting, Receiving, or Trafficking in Material Involving the Sexual Exploitation of a Minor, § 2G2.2, provides for an increase of at least five levels "if the offense involved distribution." § 2G2.2(b)(2). This led the *Deane* court to conclude that the Commission was aware that the Guideline would also cover the more passive violators. 914 F.2d at 14. As we noted above, the *Deane* court did not discuss the possibility of analogy to § 3B1.2. In any event, we note that notwithstanding the possibility of a five level increase for distribution in § 2G2.2, the Mitigating Factor Guideline would still apply to a defendant involved in concerted activity with another "participant." We hold merely that it is also available as a ground for departure by analogy if the concerted activity is with someone who does not meet the "participant" definition.

Of course, Bierley is only entitled to a departure by analogy to adjustment for a mitigating Role in the Offense if the district court finds that he would have been entitled to such an adjustment had Simpson qualified as a "participant." Unlike the dissent, we choose not to decide that issue because we believe the district court should address it in the first instance.[4] Out of an

---

**3.** Receipt through the mail can be viewed as part of concerted activity with a sender. In fact, the grand jury indictment charged Bierley with "willfully and knowingly receiv[ing] and caus[ing] to be delivered by mail visual depictions of minors engaging in sexually explicit conduct."

**4.** The dissent makes two arguments. The first is its conclusion, which is concededly not based on any statement in the Sentencing Guidelines, commentary, or application notes, that it is ap-

parent that the Sentencing Commission "considered and rejected" the ground for departure which we identify. The second may be somewhat more compelling. The dissent may be accurate in stating that at the time in question the sentencing court applying § 3B1.2 would have been limited to examination of the defendant's role in the offense charged. However, it is the district court that has the initial obligation of applying the Sentencing Guidelines. We are unwilling to adopt the dissent's approach, which in effect usurps the district court's function by

abundance of caution, we note that the district court may not base its determination as to Bierley's role in the offense on the view that receipt of the material involved in this offense is less culpable than sending it.[5] Guideline § 2G2.2 treats them equally. Both offenses contribute to the exploitation of children which the statute was designed to root out from our society.

### III. *Conclusion*

We have held that the district court did not err in concluding that § 3B1.2 was, in itself, not the basis for a downward adjustment for Bierley's mitigating role in the offense because Bierley was the only "participant." We have held, however, that the district court does have the authority to depart from the Guidelines in sentencing Bierley if it determines, by analogy to § 3B1.2, that Bierley's conduct would qualify as "minor" or "minimal" had Simpson been a "participant." We will therefore vacate the judgment of sentence and remand this case to the district court so that it can resentence Bierley consistent with this opinion.

ALITO, Circuit Judge, dissenting.

The majority holds that a sentencing court may depart below the range prescribed by the Sentencing Guidelines if the court concludes that a defendant played a "minor" or "minimal" role in activity involving no other "criminally responsible" participants but only government undercover agents. The majority remands so that the sentencing judge may determine whether such a departure is appropriate in the present case. I dissent for two reasons. First, the Sentencing Reform Act, 18 U.S.C. § 3553(b), and the Sentencing Guidelines preclude departure on the ground identified by the majority. Second, the defendant in this case clearly did not play a

"minor" or "minimal" role in the offense in question.

### I.

Under 18 U.S.C. § 3553(b), a sentencing court must impose a sentence within the range set out in the Guidelines "unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." *See United States v. Pharr*, 916 F.2d 129, 132 (3d Cir.1990). It is clear to me that the mitigating circumstance identified by the majority in this case was considered and rejected by the Sentencing Commission as a basis for sentence reduction when the Commission framed Chapter 3, Pt. B of the Guidelines, which deals comprehensively with adjustments to the offense level based upon a defendant's role in the offense.

Two sections of Chapter 3, Pt. B—3B1.1 and 3B1.2—deal specifically with adjustments based upon the defendant's role relative to that of the other participants in group activity. Section 3B1.1 (Aggravating Role) permits upward adjustments for organizers, leaders, managers, and supervisors; Section 3B1.2 permits downward adjustments for "minimal" or "minor" participants. Both of these provisions apply only to offenses "committed by more than one participant." Chapter 3, Pt. B Introductory Commentary. A participant is defined as "a person who is criminally responsible for the commission of the offense, but need not have been convicted." Section 3B1.1, Application Note 1. Therefore, as the majority correctly recognizes, a defendant's offense level may not be adjusted under Section 3B1.1 or Section 3B1.2 if the only other participants in the offense are individuals, such as undercover government operatives, who are not "criminally respon-

---

deciding that Bierley's role in the offense did not qualify him for any departure based on an analogy to the adjustment guideline. We believe that determination is not ours to make in the first instance, and prefer that it be referred back to the district court, which mistakenly believed it did not have the power to reach the issue of departure.

**5.** It is unlikely that Bierley's professing an interest in the collection of unusual objects is relevant to his role in the offense. In any event, if that issue arises, the district court will have to determine whether Bierley's letters which appear in the appendix were inconsistent with that intent.

sible." In the present case, since there were no other "criminally responsible" participants, the defendant cannot obtain an adjustment under Section 3B1.2, as the majority properly holds.

The majority fails to recognize, however, that Chapter 3, Pt. B also precludes a *departure* based on a defendant's role in group conduct if none of the other participants is "criminally responsible." When the Commission decided to limit Sections 3B1.1 and 3B1.2 to offenses committed by more than one criminally responsible participant, the Commission necessarily decided that no sentence adjustment should be allowed based on a defendant's role relative to other participants if none of those other participants is "criminally responsible." This limitation on the applicability of Sections 3B1.1 and 3B1.2 was not "fortuitous," as the majority suggests (Typescript at 16), but was necessarily the result of a deliberate choice.

Furthermore, I do not think that the Commission could have failed to realize that the category of participants who are not "criminally responsible" would consist overwhelmingly of undercover agents. Use of undercover agents has become a very common and important method of investigating clandestine criminal activity, such as the drug cases that now dominate the federal criminal docket. *See e.g., Report of the Federal Courts Study Committee* 36 (1990). The number of federal cases involving other categories of participants who are not criminally responsible—such as the insane, infants, individuals who act under duress, and those who innocently aid criminal conduct—is undoubtedly small in comparison with the number of cases involving undercover agents. Thus, it seems abundantly clear to me that the Commission must have considered and rejected the precise ground for departure identified by the majority.

The majority's decision, in my view, also violates Section 3B1.4 of the Guidelines, which provides that "[i]n any other case [i.e., those not covered by Sections 3B1.1– 3B1.3], no adjustment is made for role in the offense." As the Ninth Circuit recently observed, "Section 3B1.4 makes the basis for role adjustments spelled out in Chapter 3B exclusive." *United States v. Zweber*, 913 F.2d 705, 708 (9th Cir.1990). To borrow the language of preemption, Chapter 3, Pt. B occupies the field and leaves no room for the judicially crafted ground for departure outlined by the majority.

In sum, because it is apparent that the Sentencing Commission rejected the ground for departure identified by the majority, departure on that basis is barred by 18 U.S.C. § 3553(b).

II.

Even if a sentencing court were allowed to depart based upon a defendant's role in concerted activity involving no other criminally responsible participant, no such departure would be permitted in this case. In *United States v. Kikumura*, 918 F.2d 1084, 1111–1114 (3d Cir.1990), it was held that a sentencing court that departs from the Guidelines generally must be guided by any analogous Guidelines provisions. Accordingly, as the majority recognizes (Typescript at 19), a sentencing court that departs from the Guidelines on the ground identified by the majority would still be required to employ the methodology set out in Sections 3B1.1 and 3B1.2. Under that methodology, no departure would be allowed in this case because the defendant plainly did not play a "minor or "minimal" role in the offense.

A.

In cases like this one involving offenses committed before November 1, 1990, five circuits have held that the defendant's role must be assessed in relation to the offense of conviction. *United States v. Zweber*, 913 F.2d at 709; *United States v. Pettit*, 903 F.2d 1336, 1341 (10th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 197, 112 L.Ed.2d 159 (1990); *United States v. Tetzlaff*, 896 F.2d 1071, 1074 (7th Cir.1990); *United States v. Williams*, 891 F.2d 921, 926 (D.C.Cir.1989); *United States v. Williams*, 879 F.2d 454, 458 (8th Cir.1989). *But see United States v. Gordon*, 895 F.2d

932, 935 (4th Cir.1990). Under this methodology, Bierley would not be entitled to a sentence reduction because his role in committing the offense of conviction—receipt of child pornography (18 U.S.C. § 2252(a)(2))—cannot be viewed as "minor" or "minimal." Bierley saw an advertisement offering "rare amateur hard core videos." He responded with a letter specifically seeking particular types of child pornography, including depictions of prepubescent females engaged in vaginal and oral sex acts and acts of bestiality. In response, he was sent a catalog, placed an order, and received the child pornography that he requested. These facts clearly show that Bierley fully and willingly participated in the offense of receiving child pornography. Therefore, a sentencing judge focusing solely upon the offense of receiving child pornography, could not reasonably conclude that Bierley's participation or moral culpability was "minor" or "minimal" relative to that of the undercover agents or the characters whom they portrayed.

To be sure, a sentencing judge might conclude that a person who purchases child pornography from a large pornography ring and is convicted for receipt of child pornography is less culpable than the leaders of the rings. This sort of analysis may be what the majority has in mind in remanding this case for resentencing. *See* Typescript at 17 ("[I]t makes little sense to authorize departure for a defendant who procured material from a nationwide child pornography ring but not for a defendant whose supplier was an undercover postal inspector."). Any such analysis, however, would be squarely contrary to the methodology requiring a sentencing judge to focus solely upon a defendant's role in the offense of conviction. Under this methodology, any conduct other than participation in the offense of conviction could not be considered. Thus, even if the organization or individual from whom Bierley made his purchase had engaged in other more serious criminal conduct, that additional criminal conduct on the part of the seller would not mitigate Bierley's role in the offense of conviction. Indeed, even if Bierley had made his purchase from the world's largest commercial producer and distributor of child pornography, his role in the offense of receiving child pornography would not be "minor" or "minimal."

## B.

An amendment to the Introductory Commentary to Chapter 3, Pt. B that was added effective November 1, 1990, prescribes a somewhat different methodology for assessing a defendant's role in the offense. But even if we employ this methodology in the present case, Bierley would still not be entitled to a sentence reduction.

The new commentary states that "[t]he determination of a defendant's role in the offense is to be made on the basis of . . . all conduct included under Section 1B1.3(a)(1)–(4)." In a single-count case such as this one, this conduct generally consists of all acts relating to the offense of conviction that the defendant aided and abetted and all reasonably foreseeable conduct committed in furtherance of any jointly undertaken criminal conduct. Section 1B1.3(a) and Application Note 1. In simplified terms, therefore, the new methodology prescribed by the Commission permits a sentencing judge to look not only at the defendant's role in the offense of conviction but also at his role in all related criminal conduct for which he could have been found criminally responsible as an aider and abettor or as a conspirator.

Despite its somewhat broader focus, this new methodology clearly produces the same result in the present case, for under this methodology the only conduct that the sentencing judge could consider would be the transportation and receipt of the items of child pornography that Bierley ordered and obtained. As far as the record shows, Bierley himself on the occasion in question did nothing besides purchasing and receiving child pornography. Moreover, even if he had made his purchase from a real pornography distributor rather than a government sting, he could not have been found to have aided and abetted any broader crimes committed by the distributor or to have undertaken together with the distribu-

tor to participate in any broader criminal activity. Thus, under the new methodology now prescribed by the Commission, the sentencing judge in the present case would still be required to assess Bierley's role solely with respect to the purchase and receipt of child pornography. Under such an assessment, in my judgment, Bierley cannot reasonably be viewed as playing a "minor" or a "minimal" role.

### C.

Finally, if the appropriateness of a downward departure based on Bierley's role in the offense is judged, as 18 U.S.C. § 3553(a)(2) directs, by reference to the sentencing goals set out in 18 U.S.C. § 3553(a)(2)—just deserts, deterrence, incapacitation, training, and treatment—it is clear that no such departure is justified. Bierley's Guidelines offense level was based entirely on what he did—receipt of child pornography involving prepubescent minors. Unlike, for example, a conspiracy defendant, whose offense level may be increased due to conduct by other conspirators (see Section 2X1.1), Bierley's offense level did not take into account group conduct. In my view, therefore, it would be irrational to reduce Bierley's sentence on the ground that he is less culpable than the undercover agents or the character whom they were pretending to be. If the punishment prescribed by the Guidelines for receipt of child pornography is proper in light of the sentencing goals set out in 18 U.S.C. § 3553(a)(2) (and we are not free to overrule the Sentencing Commission's resolution of this question), then the range of punishment prescribed by the Commission (no more and no less) is the proper punishment in this case.