

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-19-2002

# USA v. Weir

Precedential or Non-Precedential: Non-Precedential

Docket No. 01-4407

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"USA v. Weir" (2002). *2002 Decisions.* Paper 586.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/586

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

————

NO. 01-4407

————

UNITED STATES OF AMERICA

v.

GERALD WEIR,
Appellant

————

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Crim. 99-cr-00705-1)
District Judge:  Hon. Joseph A. Greenaway, Jr.

————

Submitted Under Third Circuit LAR 34.1(a)
September 9, 2002

Before:  SLOVITER, RENDELL, and FUENTES, Circuit Judges

(Filed : September 19, 2002 )

————

OPINION OF THE COURT

SLOVITER, <u>Circuit</u> <u>Judge</u>.

## I.

### Facts and Procedural History

Appellant Gerald Weir, an attorney, was the president and 50% owner of Capital Resources Corporation (CRC), a mortgage broker and sales financing corporation licensed in New Jersey to sell first and second mortgages. CRC was affiliated with Capital Financial Corporation (later changed to Capital Homeowners Corporation (CHC)) and Ready Capital Corporation (RCC), two companies engaged in originating residential first and second mortgage loans in New York and Rhode Island respectively. CRC would often purchase first mortgages from CHC and RCC which it then sold to banks pursuant to Loan Agreements under which, for a fee, it collected the principal and interest payments from the borrowers on behalf of the bank. CRC agreed to repurchase from the bank any loans that became more than ninety days delinquent. CRC was obliged to track the borrowers' payment history and issue monthly delinquency reports to the banks to show the status of each loan.

On or about May 1984, a number of loans became more than ninety days delinquent but CRC did not have enough money in its operating account to repurchase all of the delinquent loans. Weir directed CRC to make monthly payments to the banks on the delinquent borrowers' behalf (called "perfect pays") and to generate false monthly delinquency reports to the banks to conceal the borrowers' delinquencies. This continued until December 1989 when, due in part to CRC's practice of making monthly payments on

2

behalf of its delinquent borrowers, CRC filed for Chapter 11 bankruptcy. Knowing that

CRC's financial records could be subject to examination by the bankruptcy trustee, CRC

prepared accurate delinquency statements for the month of December which showed that

CRC owed nine banks over $15 million for the repurchase of delinquent loans.

The bankruptcy relieved CRC of its obligation to buy back the hundreds of

delinquent mortgage loans it was obligated to repurchase. As a result, the banks had to

service the loans themselves or recover those losses by filing bankruptcy claims or by

selling or foreclosing on the real property securing the loans.

In November 1999, Weir pled guilty, pursuant to a plea agreement, to an information

charging him with one count of bank fraud, 18 U.S.C. §§ 2, 1344, and nine counts of issuing

false statements to financial institutions, 18 U.S.C. §§ 2, 1014.[1]   The parties also agreed to

the following: (1) that section 2F1.1 of the 2000 Sentencing Guidelines applied to Weir's

fraud offense, which provided a base offense level of six; (2) that Weir's fraud did not

cause a loss of more than $1,500,000, which under U.S.S.G. § 2F1.1(b)(1)(M) limited the

increase in Weir's offense to no more than eleven additional levels; (3) that a two-level

enhancement for more than minimal planning applied, see U.S.S.G. § 2F1.1(b)(2)(A); (4)

that a three-level downward adjustment was appropriate under U.S.S.G. §§ 3E1.1 (a) and (b)

(2); and (5) that Weir did not abuse a position of trust or use a special skill in committing

---

[1]    The record does not indicate why it took the government ten years to charge Weir with these crimes. The crimes of bank fraud and issuing false statements to banks do not contain statute of limitations provisions, and Weir did not raise a statute of limitations issue as an affirmative defense. See Fed. R. Civ. P. 8(c).

the crimes, see U.S.S.G. § 3B1.3.  The sentencing judge was not bound by the plea agreement and was able to exercise his discretion with respect to Weir's sentence.  Weir retained the right to argue the issue of sentencing in the plea agreement because "the government had not provided the documentary basis for its loss calculation."  Br. of Appellant at 4.

The District Court held extensive sentencing hearings on the issue of loss calculation under U.S.S.G. § 2F1.1(b) (2000) (deleted 2001).  Citing letters it received from seven banks who were defrauded by Weir, the Government initially asserted that Weir was responsible for a loss of $929,494.94.  However, after Weir claimed that the Government's loss analysis failed to credit the banks with payments they received from the bankruptcy court, from sales of defaulted mortgages, and from foreclosure sales of delinquent properties, the Government reduced its loss calculation to $629,228.00.

At the sentencing hearings, FBI Special Agent Nicholas Zubulake and FBI Financial Analyst Peter Wong testified for the Government.  Donald T. Faber, who was  appointed by the bankruptcy court in 1990 as a certified public accountant for CRC, testified for the defense on the issue of loss as an expert in the field of accounting.

During the sentencing hearings, the District Court further reduced the Government's claim of loss, finding that two of the banks had been fully compensated through bankruptcy distributions and three other banks were fully compensated by the resale of real property securing various loans.  Only two banks remained in the loss calculation: Guttenberg Savings and Loan (Guttenberg) and Fitchburg Savings and Loan (Fitchburg).  The

4

Government argued that sentencing Weir based on only two banks' losses would underestimate the seriousness of Weir's conduct, see U.S.S.G. § 5K2.0, and moved for a three-level upward departure to Weir's sentence.

The Government initially had claimed that Guttenberg sustained a loss of $207,237.06 and that Fitchburg sustained a loss of $75,862.22, but the District Court, after considering the bankruptcy distributions and foreclosure sales of delinquent loans, reduced Guttenberg's loss to $80,400 and Fitchburg's loss to $52,054.94, a total loss figure of $132,454.94. Although Weir sought further reduction based on the "interest differential," CRC's overpayments, and the banks' failure to send representatives to various foreclosure sales to minimize their losses, the District Court rejected this request. In light of its determination that the total loss was $132,454.94, the District Court placed Weir's total offense level at 13. See U.S.S.G. § 2F1.1(b)(1)(H) (2000) (deleted 2001) (providing a seven-level increase to the base offense level of six for a loss between $120,000 and $200,000).

The District Court also granted the Government's upward departure motion pursuant to U.S.S.G. § 2F1.1. The court found that because Weir's fraud involved twenty-two banks and hundreds of false reports, a loss of $132,454.94 underestimated the seriousness of Weir's conduct. The District Court thus applied a three-level upward departure, raising Weir's offense level to sixteen, and sentenced Weir to twenty-one months in prison on each of the ten counts to be served concurrently and a five-year supervisory release. The court also ordered Weir to pay $2000 restitution to each of five banks, including

5

Guttenberg and Fitchburg.

Weir requested the District Court to amend its sentence pursuant to Fed. R. Crim. P. 35(c), arguing that the court's refusal to deduct the "uncollected interest" from the loss amount was in error.  App. at 46.  Weir argued that his offense level would be reduced from sixteen to fifteen and his requisite prison sentence would be reduced from 21 to 27 months to 18 to 24 months.  The District Court denied Weir's motion to amend the sentence, but released Weir on bail pending appeal to this court.

## II.

## Discussion

This court has jurisdiction, pursuant to 18 U.S.C. § 3742, to review a sentence imposed under the sentencing guidelines.

We exercise plenary review of the district court's interpretation of "loss" under the sentencing guidelines.  United States v. Maurello, 76 F.3d 1304, 1308 (3d Cir. 1996).  However, the district court's decision regarding the applicability of an adjustment under the sentencing guidelines "depends on the mixture of fact and law necessary to that court's determination."  United States v. Bierley, 922 F.2d 1061, 1064 (3d Cir. 1990).  If the district court's decision is based on "essentially factual" grounds, we will reverse only for clear error.  Id.  If the claimed error is a matter of law, this court must review the district court's decision de novo.  Id.

Weir raises three issues with respect to calculation of loss in the fraud context.  If we were to accept all of Weir's asserted reductions, the total loss would be zero and his

6

offense level would be reduced to six (0-6 months in prison). Taking them seriatim, we first consider Weir's claim that both Guttenberg and Fitchburg negligently failed to send a representative to various foreclosure sales, which would have allowed the banks to minimize their claimed losses due to Weir's fraud. We reject the claim and agree with the Government that the issue is the amount of the victim's actual loss, "not the quality of the victim's efforts to mitigate the loss." Br. of Appellee at 25. See United States v. Kopp, 951 F.2d 521, 531 (3d Cir. 1991). Second, Weir claims that both Guttenberg and Fitchburg kept "interest overpayments" – extra interest paid to the banks in February 1989 due to a computer glitch in issuing perfect pays – and that this overpayment should be used to reduce the banks' loss claim. There is no reason to do so as the issue is actual loss rather than loss from other causes. Weir further contends that both banks received "uncollected interest," which was interest that accrued on the defaulted loans and, as such, should be credited to him. Under the loan agreements, the banks had no obligation to try to collect any such interest, particularly because it was due from borrowers who had already defaulted.

Our cases have fully discussed the issue of fraud loss, and we see no need to repeat the relevant law here. The District Court showed care and diligence over the course of an entire year in attempting to resolve this particularly complex issue of loss. Over the course of the seven sentencing hearings, Weir successfully narrowed the number of banks claiming loss from nine to two and decreased the loss figure from $929,494.94 to $132,454.94.

The court's calculations were conservative. Some relevant documents were unavailable because one of the nine victim banks failed and another was unable to provide necessary documents. However, the Government provided a representative sampling of defaulted loans. Weir was entitled to no more.

## III.

## Conclusion

We have considered all of the other issues raised by Weir and are not persuaded. Accordingly, we will affirm the judgment of sentence.

_____

TO THE CLERK:

Please file the foregoing opinion.

_____

/s/ Dolores K. Sloviter
Circuit Judge