NOT PRECEDENTIAL
UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-1698
_____

UNITED STATES OF AMERICA

v.

ALHAYY HASAN, AKA Haywood Hinton,

Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 06-cr-174)
District Judge:  Hon. Legrome D. Davis
_____

Argued
December 15, 2010

Before:  RENDELL, JORDAN and HARDIMAN, *Circuit Judges*.

(Filed:  January 12, 2011)
_____

Thomas A. Dreyer  [ARGUED]
6 Dickinson Drive
Bldg. 100 – Ste. 106
Chadds Ford, PA   19317
        *Counsel for Appellant*

Michael L. Levy
Robert A. Zauzmer
Denise S. Wolf  [ARGUED]
United States Attorney's Office
615 Chestnut Street – Ste. 1250
Philadelphia, PA   19106
    *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

    Alhayy Hasan ("Hasan"), also known as Haywood Hinton, appeals an order of the United States District Court for the Eastern District of Pennsylvania denying his motion to withdraw his guilty plea to a charge of bank fraud in violation of 18 U.S.C. § 1344; he also appeals the sentence imposed for the bank fraud.  Hasan asserts that the District Court abused its discretion in denying his motion to withdraw his guilty plea, erred in deciding that he had waived any objection to venue, erred in calculating the loss pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 2B1.1(b)(1)(D), and erred in imposing a four-level leadership enhancement under U.S.S.G. § 3B1.1(a) for criminal conduct that involved five or more participants or was "otherwise extensive."

    Hasan's arguments regarding the withdrawal and validity of his guilty plea and his objection to venue are plainly without merit.  Likewise meritless is Hasan's argument with respect to the District Court's loss calculation.  We will affirm the ruling of the District Court on those points and adopt its analysis without further discussion.  There is,

2

however, merit to the challenge concerning the four-level leadership enhancement and we will therefore vacate and remand for the District Court to more fully consider that issue.[1]

## I.    Factual Background

Because we write only for the parties, we assume familiarity with the facts and procedural history.  Nevertheless, we note the following background information.[2]

On August 12, 2005, Hasan and Deborah Phillips ("Phillips") went to a branch of Commerce Bank in Philadelphia, where they were arrested for attempting to open a bank account with false identification and a counterfeit credit card.  The following day, Hasan told Secret Service agents that he had provided Phillips with a false driver's license, false corporate documents, a false credit card, and counterfeit checks.  Hasan also admitted to possession of a counterfeit check in the amount of $8,111 "that he intended to deposit into a Commerce Bank account opened by Phillips" on the day of the arrest.  (App. at 43, 66.)  Hasan consented to a search of his vehicle, which resulted in the seizure of further

---

[1] Hasan also argues that the District Court should have given greater consideration to the fact that he had served a sentence for violating supervised release.  At oral argument, the government conceded that, as of the date of sentencing in this case, April 2, 2008, Hasan had already completed a 27-month violation-of-supervised-release sentence that the PSR had incorrectly noted was still pending in the District of New Jersey.  Given that error in the PSR, the government agreed that the issue of what impact, if any, the completed 27-month sentence should have on the sentence imposed here could be appropriately raised on remand.  The government did not concede, however, that the length of incarceration imposed was unreasonable in light of the 27-month violation-of-supervised-release sentence.  It agreed only that the sentencing court should have complete and accurate information when imposing its sentence.  We agree and leave it to the District Court to consider that issue on remand.

[2] The following are the facts as given by the government in its factual recitation at the entry of plea hearing.  After the recitation, Hasan agreed "the facts are true," (App. at 45) and the Court accepted his plea.

3

counterfeit account-opening documents, credit cards and checks, as well as several pieces of paper listing multiple names, dates of birth, and Social Security numbers.

Hasan indicated that the driver's licenses and credit cards were manufactured by a person he identified simply as "Shafiq" and that the false account-opening documents were provided by another unidentified party. Hasan stated that he recruited females to assist him in opening bank accounts using false documents.

Hasan also admitted that, from approximately June 2005 to October 2005, he negotiated counterfeit checks through several bank accounts in the Southern District of New York. Those counterfeit checks were made payable either to Amir Import and Export, Inc., or to A&K, Inc., entities Hasan used in furtherance of his fraudulent activities.

On February 28, 2007, Hasan pled guilty to Count One of the indictment charging him with bank fraud under 18 U.S.C. § 1344.[3] Subsequently, on April 4, 2007, Hasan filed a motion to withdraw his guilty plea. On November 12, 2007, after appointment of new counsel, he renewed his motion. A hearing on the motion was held on November 27, 2007. The District Court denied the motion, and imposed a sentence of 60 months incarceration, five years supervised release, and restitution of $28,115.85. That sentence reflected a four-level upward adjustment under U.S.S.G. § 3B1.1(a) for Hasan's role as

---

[3] A person commits bank fraud if he "knowingly executes, or attempts to execute, a scheme or artifice (1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. § 1344.

4

the leader of a scheme that was "otherwise extensive." (App. at 215-16.)  In explaining its application of the leadership enhancement, the District Court stated:  "[A]lthough the facts reflect Mr. Hasan recruited one individual … the adjustment is appropriate based upon the otherwise extensive nature of the offense, which is a fair statement."  (App. at 216.)

## II. Discussion[4]

We exercise plenary review over challenges to a district court's interpretation and application of the Federal Sentencing Guidelines.  *United States v. Katora,* 981 F.2d 1398, 1402 (3d Cir. 1992).  We review any associated factual determinations for clear error.  *United States v. Bierley,* 922 F.2d 1061, 1064 (3d Cir. 2009).

It is not settled in our precedents whether a defendant's status under § 3B1.1(a) as "an organizer or leader of a criminal activity that … [is] otherwise extensive" constitutes a question of fact or law or some mixture of the two.  *Compare United States v. Antico,* 275 F.3d 245, 268 (3d Cir. 2001) (applying clear error review to the district court's "factual determinations that [the appellant] was an organizer or leader and that his criminal activity involved five or more participants") *with United States v. Helbling*, 209 F.3d 226, 243 (3d Cir. 2000) (holding "the District Court's factual findings to be proper and its legal conclusion that Helbling was an organizer and leader unassailable").  We need not address that problem, however, because Hasan seems to acknowledge that the dispute here is factual, as he argues that the District Court committed clear error in giving

---

[4] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231.  We have jurisdiction under to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

the four-level enhancement.  In any event, the fundamental problem in this case is that the District Court's sentence is unreviewable under any standard because the record is inadequate to allow for meaningful appellate review.

"After settling on the appropriate sentence, [a district court] must adequately explain the chosen sentence to allow for meaningful appellate review." *Gall v. United States,* 552 U.S. 38, 50 (2007) (citation omitted); *United States v. Merced,* 603 F.3d 203, 215 (3d Cir. 2010) (same).  It is not enough for a court to analyze the sentencing factors in silence; it must indicate on the record that it has done so. *Id.*  There is no "uniform threshold" for determining whether a court has supplied a sufficient explanation of its sentence, *United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009), but it must demonstrate that it has considered the parties' arguments and has a reasoned basis for the sentence it chooses to impose. *Merced*, 603 F.3d at 216.  In some instances, a short statement will be legally sufficient, and in others, a longer explanation may be appropriate. *Id.* at 215.

Pursuant to U.S.S.G. § 3B1.1(a), "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive," the offense level is increased by four levels.  Section 3B1.1(a) applies only if the defendant was an "organizer or leader" of the criminal activity in question.  In making that determination, the court should consider

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

6

U.S.S.G. § 3B1.1, Application Note 4.

The "otherwise extensive" language calls for a determination of the number of participants, both knowing and unknowing, and "whether the roles and involvement of all those persons constitute the functional equivalent of five 'participants.'" *Helbling*, 209 F.3d at 244. *Helbling* prescribes a three part test to aid in determining if activity is "otherwise extensive," 209 F.3d at 248, which is expanded upon in *Antico*.[5] 275 F.3d at 270.

Here, the plea colloquy does not show how the District Court determined whether § 3B1.1(a) should apply to Hasan. At the sentencing hearing, the Court briefly acknowledged the enhancement, stating, "although the facts reflect Mr. Hasan recruited one individual … the adjustment is appropriate based upon the otherwise extensive nature of the offense, which is a fair statement." (App. at 216.) At a previous motions hearing, the Court recognized that, for the purposes of finding the four level enhancement, a court need not make its "calculation based upon a pure number but rather … [may look] at the

---

[5] Under *Helbling*, the sentencing court must first separate participants from non-participants. 209 F.3d at 248. Second, the sentencing court must determine whether the defendant used the services of the non-participants with a specific criminal intent. *Id.* Third, "the court must determine the extent to which the services of each individual non-participant were peculiar and necessary to the criminal scheme." *Id.* The activities of non-participants are to be considered with respect to the particular offense charged and must "relate to the common criminal activity or scheme." *Antico*, 275 F.3d at 270. Once the court has determined which individuals should be counted, the court must decide if the sum of the participants and countable non-participants is the functional equivalent of five participants. *Helbling,* 209 F.3d at 248. That determination is "guided by the sentencing court's discretion," and other factors may be used to evaluate the value of countable non-participants. *Id.*

sort of textual nature of the conduct." (Supp. App. at 307). At that hearing, the Court also stated it was obvious that "we're speaking about persons that the defendant has solicited to assist him in the criminal enterprise." (Supp. App. at 306).

The District Court's statements are helpful in revealing its approach to Hasan's sentencing, but, even when taken together, they do not meet the minimum threshold required to enable us to conduct meaningful appellate review of its sentencing conclusion. *See Merced,* 603 F.3d at 215 (finding that, though there is no "mandatory script for sentencing," the District Court must demonstrate that it has carefully considered and analyzed the sentencing factors). Accordingly, we cannot determine if the court committed error here, clear or otherwise.

Though there may well be sufficient evidence in the record to support the application of a § 3B1.1(a) leadership enhancement in this case, the District Court's analysis and its reasoning for the application of the enhancement are unclear and, as the government has conceded, we must therefore vacate the judgment order and remand for resentencing.[6]

## III.    Conclusion

For the foregoing reasons, we will affirm the District Court as to all issues except those pertaining to sentencing and thus will vacate and remand for resentencing.

---

[6] In a letter dated December 13, 2010, the government acknowledged that the District Court's statement is inadequate and suggested that it is "most appropriate" for this issue to be remanded to the District Court for further assessment. Letter from Zane Memeger, United States Attorney, to the Third Circuit Panel, *United States v. Alhayy Hasan*, No. 08-1698 (3d Cir. Dec. 15, 2010).